William E. and Thelma S. DOBSON et al.

v.

The UNITED STATES.

No. 401–62.

United States Court of Claims.
April 17, 1964.

Houston H. Wasson, New York City, for plaintiffs. Lovejoy, Morris, Wasson & Huppuch, New York City, of counsel.

Conrad T. Hubner, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Edward R. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

This is a suit for recovery of $11,054.95 paid as income taxes for the year 1949. The question presented is whether the mitigation statutes, sections 1311 to 1315 of the Internal Revenue Code of 1954, permitted the assessment of deficiencies in 1961 for 1949 income against the taxpayers. They had reported as capital gain in 1948 the entire gain from sale of stock, though part of the sale price was not received until 1949. The Commissioner of Internal Revenue originally asserted a deficiency on the ground that the entire capital gain from the sale of stock should be treated as ordinary dividend income recognizable in 1948. The taxpayers (including the instant plaintiffs) appealed this assessment to the Tax Court, claiming that the entire gain had properly been reported as capital gain in 1948, *and in the alternative,* that any moneys received in the sales transaction in 1949 could not be considered as dividend income recognizable in 1948. The Tax Court, in its decision filed May 29, 1959, in part sustained the Commissioner, but in addressing itself to the petitioners' alternative contention, stated:

> "2. Petitioners are correct, however, in their contention that the final payment on the note should have been reported as income in 1949 rather than 1948. * * *" Dudley v. Commissioner, 32 T.C. 564, 590 (1959, aff'd 279 F.2d 219 (C.A.2, 1960).

Following statutory notice of deficiency, each of the taxpayers in the present case was assessed the deficiencies resulting from their failure to report for 1949 the dividend payments received in that year.

At the time the Tax Court judgment became final in 1960 the Statute of Limitations [1] had run, and would bar the deficiencies assessed in 1961 by the Commissioner for 1949 income taxes which are the subject of this action, unless the mitigation provisions of sections 1311–1315, Internal Revenue Code of 1954, 26 U.S.C. §§ 1311–1315, are applicable.

Section 1311, entitled "Correction of error" provides:

"(a) General rule.—

"If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

"(b) Conditions necessary for adjustment.—

"(1) Maintenance of an inconsistent position. Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

\* \* \* \* \*

"(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in *the determination* a position maintained by the taxpayer with respect to whom the determination is made, and the position maintained * * * by the taxpayer in the case described in subparagraph (B) *is inconsistent* with

---

I. Section 6501 of the Internal Revenue Code of 1954, 26 U.S.C. § 6501 requires assessment of the tax within three years after the filing of a return.

the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be." [Emphasis supplied.]

The word "determination" is defined by section 1313 to mean:

"(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final; * * * ".

The "determination" in this case by the Tax Court and Circuit Court decisions required the exclusion from the taxpayers' gross income for 1948 of those sums which the taxpayers received in 1949 and their inclusion in 1949. The failure to report such income in 1949 was therefore an erroneous omission within the meaning of section 1312(3) (A) of the Code:

"(3) Double exclusion of an item of gross income.—

"(A) Items included in income.—

"The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; * * * "

After rejecting taxpayers' first contention that the amount realized from the sale of the stock was a long-term capital gain in 1948, the court adopted the alternative position taken by the taxpayer "that the final payment on the note should have been reported as income in 1949 rather than 1948."

The position taken by the Government before the Tax Court against these plaintiffs was that all of the payments were income includable in 1948, which was consistent with the position taken by the Tax Commissioner in first assessing the original deficiency.

To sustain its position here, the Government relies on Cory v. Commissioner, 29 T.C. 903 (1958), aff'd 261 F.2d 702 (C.A.2, 1958), cert. denied 359 U.S. 996, 79 S.Ct. 877, 3 L.Ed.2d 834. In that case, the taxpayers had treated royalties as long-term capital gain for 1944. They had actually received most of the royalties in 1945. No mention of the royalties was made in the 1945 return. Later, taxpayers claimed a refund for 1944 on grounds that only part of the royalties were received in that year. A subsequent determination established that the royalties should have been treated as ordinary income. At the time of that determination the Tax Court sustained taxpayers' *alternative* position that only the amounts received in 1944 were taxable in that year. The Commissioner then sued for the taxes due on the amounts received in 1945, relying on the mitigation statutes to overcome the statute of limitations bar. In holding for the Commissioner the Tax Court pointed out:

"The position maintained by the petitioners in their claim for refund *and in Docket No. 37209,* that only $12,000 was received by them in 1944, from which it would necessarily follow that the remainder of the fund was received in 1945, *was inconsistent with the position taken in filing their returns,* that $42,000 was received in 1944 and none of the royalties in 1945. This inconsistent position of the petitioners was adopted in the determination of the Tax Court in 23 T.C. 775. The determination required the exclusion of an item * * * included in a return filed by the taxpayers for 1944 which was erroneously omitted from their return for 1945. The determination became final upon the denial of the petition for certiorari on October 8, 1956. * * * The circumstances are within the terms of the statute and the correction of the error is authorized notwithstanding the statutory period of lim-

itations has run." [29 T.C. at 907, emphasis supplied.]

Plaintiffs attempt to distinguish Cory by asserting that whereas the taxpayers in the Cory case took an inconsistent position *by filing a claim for refund*, plaintiffs here waited until they submitted their briefs before the Tax Court in asserting an alternative and defense position. However, it is apparent that the Tax Court reached its determination in Cory, supra, not solely on the basis of a formal refund claim, but upon the contentions and position taken by the taxpayers in the petition, proof and briefs submitted. The same inconsistent position was maintained in the same manner in the alternative by the taxpayers before the Tax Court in the present case, and the Tax Court's reasoning in Cory, supra, is applicable. The fact that plaintiffs maintained this inconsistent position as to the 1949 income before the Tax Court in the *alternative* is sufficient to meet the requirements of section 1311(b) (1) of the Code. Estate of SoRelle v. Commissioner, 31 T.C. 272 (1958), and Cory v. Commissioner, supra.

Plaintiffs have also cited the recent decision of the Tax Court in Estate of Abraham Goldstein, ¶63,258 P–HTC Memo, decided September 24, 1963, which held that the Commissioner failed to prove that taxpayers maintained a position that was inconsistent with their position in a closed year.

In Goldstein, supra, taxpayers had omitted from their gross income in 1950 the fair market value of insurance renewal rights received as part of a liquidation distribution of assets in that year, on grounds that such rights had no ascertainable value. In subsequent years, they treated income received from such rights as long-term capital gain. The Commissioner issued a statutory notice of deficiency for the years 1953 and 1954 contending that the commissions received were ordinary income. The taxpayers contested this determination on the principal ground that the sums involved were capital gain. They attacked the Com-

missioner's position by urging alternatively that if the value of the commission rights were ascertainable in 1950, the value of those rights at that time had not yet been exceeded through collection. The renewal commission received therefore would have constituted a return of capital, not taxable income in 1953 and 1954. The Tax Court ultimately adopted this latter view. The Commissioner thereupon sought to reopen 1950 through invocation of the mitigation statute. The Tax Court, in rejecting the Commissioner's argument pointed out that neither of the two necessary elements was present. Besides seeing no inconsistency in taxpayers' position, the court pointed out:

"The decision of the Court in its determination was inconsistent with the position taken by the taxpayers before the Court. This is true because by virtue of the statement made in the Court's Opinion, the parties agreed that if the dissolution and distribution was a closed transaction in 1950, then the commission collections would be ordinary income. The primary position taken by the taxpayers before the Tax Court, i. e., that the distributed renewal commission rights had no ascertainable fair market value on their distribution in 1950, *was determined by the Court directly to the contrary*. This alone, we think, makes inapplicable the provisions of sections 1311 through 1314. Nowhere is there any evidence in this record that petitioners have at any time agreed, contrary to the position taken in their 1950 return that the renewal commission rights received by them in the dissolution of A. & A. Corporation had an ascertainable fair market value at that time. *The inconsistency in this case appears to be that of the respondent.* He is the one seeking to now adjust a closed year, the return for which and for the years 1951 and 1952 he had accepted. It is implicit throughout the Congressional history of these sec-

tions that one seeking their application may not benefit by his own inconsistency." [Emphasis supplied]

We hold that this conclusion by the Tax Court does not apply in any event to the particular facts and issues in the present case.

■ The inconsistency of position relied upon by the Government in the present case is between "the position *maintained by the Taxpayer*" and adopted by the Tax Court in its determination, and the "erroneous omission" *by the taxpayers* in their tax return, of income received in 1948 and 1949.

We conclude that in taking this alternative position adopted by the Tax Court, plaintiffs maintained a position that was inconsistent with their erroneous omission of this 1949 income from their 1949 return, and under such circumstances, the mitigation statutes would relieve the defendant of the bar of the statute of limitations.

Defendant's motion for summary judgment is granted and plaintiffs' cross-motion is denied. The petition is, accordingly, dismissed.

LARAMORE, Judge (concurring in result).

■ It is my belief that the majority's opinion is based on a too broad interpretation of what an "inconsistent position" is. Under its holding, all alternative arguments urged by taxpayers which are adopted by the court making the determination, will always be regarded as an "inconsistent position" within the meaning of section 1311(b) (1). The narrow issue with which we are confronted is whether taxpayers, by making an alternative argument, took an inconsistent position or were they merely successfully pointing out an inconsistency in the Government's main position. In my view, the answer to that question depends on whether or not the court, in adopting the alternative argument in its determination, is required to make an independent determination as to the merits of the alternative argument urged. If the Commissioner's position on the main question is logically consistent with a decision either way on the question raised by the alternative argument, then the taxpayers have maintained an inconsistent position.[1] E. g., Cory v. Commissioner, 29 T.C. 903 (1958). However, if taxpayers in making an alternative argument merely point out to the court that if it adopts the position on the main issue urged by the Commissioner, a consistent application of that position requires the adoption by the court of the taxpayers' alternative argument, then taxpayers have not maintained an inconsistent position but have merely pointed out an inconsistency in the Government's position. E. g., Heer-Andres Investment Co. v. Commissioner, 22 T.C. 385 (1954); Estate of Abraham Goldstein v. Commissioner, T.C.Memo 1963-258, P–H,T.C. Memo, par. 63,258 (1963).[2] In the latter

1. In the instant case it appears that both parties agree that there is an inconsistency of treatment. The area of conflict is with respect to whom the inconsistency is to be attributed.

2. In Heer-Andres, consistent application of the Commissioner's position with respect to the proper accrual accounting treatment to be accorded to rental income would require the court to exclude from income certain rental receipts for 1945 which had been improperly reported in 1946. The Tax Court held that since it had agreed with the Commissioner's position as to the accrual accounting question, the Commissioner logically had to concede that the accrued rental receipts for 1945 were not income in 1946. The Commissioner's contention in the earlier case that the 1945 income should be taxed in 1946 was, therefore, the Commissioner's inconsistency and not that of the taxpayer, and his effort in the latter case to attribute the income to 1945 could not be said to arise from taxpayer's inconsistency.

The position advanced by the Commissioner in Goldstein in giving ordinary income treatment to amounts received on renewal commissions, required that the renewal rights received by the taxpayer in a corporate dissolution be valued in the year received, since the Commission view-

situation the position taken by the Commissioner absolutely requires a decision for the taxpayers on their alternative argument, while in the former, the court can adopt or reject taxpayers' alternative argument without affecting its decision on the main issue.

With regard to the instant taxpayers, it did not follow of necessity from the Commissioner's dividend treatment of the amounts received, that the money received in 1949 would be reportable only in 1949. The Commissioner in the Tax Court urged that all the amounts which were paid should be taxable in 1948 although the final installment was not paid until 1949. He argued that the transaction was not, in fact, an installment sale since United in 1948 had obligated itself to pay the entire sum and the modifying agreement extending the privilege of deferring some of the payments was purely incidental. Faced with this question, the Tax Court had to make an independent determination as to whether, among other things, the note of the obligor or the obligor's promise to pay had any value in 1948. The court found that:

"* * * Upon this record it appears that the note was given to evidence indebtedness of $350,000, not in payment thereof. Throughout this transaction the promoting parties were interested in cash payment by United, not in its promise to pay. The original agreement of January 24, 1948, provided that United should deposit $150,000 per tanker as each tanker was delivered in order to secure its performance should it choose to exercise the option. Apparently this deposit was never made. Respondent does not contest the fact that United was in

tenuous financial condition at all relevant times so as to render questionable the value of any promise it might give. Although its note was secured, we do not know the value of the security; certainly the National stock was of little value in view of National's heavy indebtedness and the virtually nonexistent charter market for the tankers. Finally, the escrow arrangement itself, whereby the note was in terms payable to the escrow agents who retained possession of the note and received all payments thereon, indicates that the note was not available to the petitioners as an equivalent of cash in any practical or commercial sense, nor was it intended to be. It follows that the fair market value of the note, if any, was not includible in income but that payments on the note should have been reported as received." [32 T.C. 564, 590.]

Thus it is clear that the position taken by the Commissioner did not absolutely require a decision for the taxpayers on the alternative issue, for had the Tax Court found that the United's promise to pay had value in 1948, the amounts paid in 1949 would have been taxable in 1948. It follows under the test postulated above, that taxpayers maintained an "inconsistent position" within the meaning of section 1311(b) (1). Since it is agreed by both sides that the other requirements have been met, the mitigation statutes relieve the defendant of the bar of the statute of limitations.

For the reasons stated above, I concur in the result reached by the majority's opinion.

WHITAKER, Judge, concurs in the concurring opinion.

ed the receipt of the rights as a closed transaction. This was pointed out by taxpayers and they further contended that before ordinary income treatment be given to the amounts received as renewal commissions, they were entitled to recover their basis first. Thus the taxpayers in Goldstein, in making their alternative argument, were merely pointing out to

the court that if it adopts the Commissioner's position in giving ordinary income treatment to the amounts received, it logically follows that a valuation had to be made and that they were entitled to recover their basis first. The Tax Court could not have adopted the Commissioner's position without adopting taxpayers' alternative argument.

JONES, Chief Judge, and DAVIS, Judge, believing that the court's opinion is not as broad as has been suggested, concur in both the court's opinion and in the body of Judge LARAMORE'S concurring opinion.