331 F.2d 485
 64-1 USTC P 9448
 Elaine YAGODA (formerly Elaine Drechsler), Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
TRUST for the Benefit of Lena DRECHSLER, Lena Drechsler,
Exec. of Estate ofGus Drechsler, Deceased Trustee,
Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Trust for the Benefit of Elaine Drechsler, Lena DRECHSLER,
Trustee,Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Lena DRECHSLER, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 64-67, Dockets 28244-28247.
 United States Court of Appeals Second Circuit.
 Argued Jan. 22, 1964.
Decided May 1, 1964.
 
 Bernard Weiss, New York City, for petitioners.
 Richard J. Heiman, Dept. of Justice, Washington, D.C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Washington, D.C., on the brief), for Commissioner.
 Before FRIENDLY and HAYS, Circuit Judges, and ANDERSON, District judge.*
 HAYS, Circuit Judge:
 
 
 1
 Petitioners seek review of decisions of the Tax Court of the United States, 39 T.C. 170 (1962), holding (I) that the mitigation provisions of Sections 1311-1314 of the Internal Revenue Code of 1954 permit the assessment of certain deficiencies that would otherwise be barred by the statute of limitations, and (II) that petitioner Elaine Yagoda (formerly Elaine Drechsler) is liable as transferee of a trust for the benefit of Elaine Drechsler.
 
 
 2
 During the taxable years in question, 1944 and 1945, Gus Drechsler and petitioner Lena Drechsler were husband and wife. Gus Drechsler died on January 12, 1946 and Lena as executrix filed Gus's income tax return for 1945. Petitioner Elaine Yagoda is the daughter of Gus and Lena Drechsler.
 
 
 3
 Gus Drechsler was one of three stockholders in T. Frederick Jackson, Inc., a corporation engaged in the business of electrical contracting. On October 26, 1944, the corporation assigned certain contracts to a partnership, T. F. Jackson Company, formed that day by Gus and the other two shareholders. Gus then created two irrevocable trusts, one for the benefit of Lena and one for the benefit of Elaine, and gave to each trust a 27% Partnership interest, retaining a 6% Interest in his own name. On April 9, 1945, Lena, by terminating the trust for her benefit in accordance with the provisions of the trust and receiving all the property of the trust, became a partner in her own right. The partnership terminated its business and existence on August 31, 1945, but thereafter such actions were taken as were necessary to wind up its affairs and make final distribution of its assets.[1] This litigation is occasioned by the attempt of the Commissioner to correct certain errors in the allocation of the income of the T. F. Jackson Company partnership.
 
 
 4
 On the partnership tax returns for 1944 and 1945, Gus, the trust for the benefit of Lena (in 1945, Lena), and the trust for the benefit of Elaine were shown as entitled to 6 percent, 27 percent and 27 percent, respectively, of the partnership's distributable net income. These proportionate shares of partnership income were reported in the respective 1944 and 1945 income tax returns for the trusts and the individual partners.
 
 
 5
 The income tax returns of the partnership, Gus, and the two trusts for 1944 and 1945 and the individual return of Lena for 1945 were examined as a unit by the Commissioner. The Commissioner refused to recognize either the two trusts or Lena, individually, as bona fide partners of T. F. Jackson Company during 1944 or 1945 and treated their respective shares of the partnership income as income to Gus. As a result, deficiencies of $47,927.11 and $42,258.90 were determined against the estate of Gus Drechsler for the years 1944 and 1945. These deficiencies were paid in full with interest on November 19, 1948, payment being effected in part by the Commissioner's crediting against the deficiencies overassessments with respect to the trusts and Lena Drechsler.
 
 
 6
 On August 9, 1949, Lena Drechsler, as executrix of the estate of Gus Drechsler, filed claims for refund of the deficiencies. During Internal Revenue Service consideration of the claims, the revenue agent assigned to the case was advised by counsel for the estate that the government should take the necessary steps to protect its position with regard to the trusts and Lena. The agent replied that it was not necessary to send out deficiency notices to these other taxpayers, since any refund to the estate could not exceed the cash payment made by the estate, exclusive of the overassessments credited to the trusts and Lena. The Commissioner disallowed the refund claims and the estate brought suit in the United States District Court for the Southern District of New York. On April 18, 1958, the district court rendered judgment, 161 F.Supp. 319 (1958), for the estate in the entire amount of the deficiencies, inclusive of the overassessments. That determination became final on September 19, 1958, when the notice of appeal filed by the United States was dismissed by stipulation. By that time correction of the effect of the error of excluding, through crediting the overassessments, any share of partnership income from the returns of the trusts and Lena would have been prevented, absent Sections 1311-1314, by operation of the statute of limitations. Proceeding under these mitigation of limitations provisions, the Commissioner sent statutory notices of deficiency to the petitioners on June 5, 1959. Liability as partners is asserted against Lena (for 1945) and the trusts. Liability as transferees is asserted against Lena (for 1944) and Elaine.
 
 I.
 
 7
 Prior to the Revenue Act of 1938 a double advantage could accrue to the Commissioner or to a taxpayer who successfully maintained as to the treatment of a particular item in an open year a position inconsistent with an erroneous treatment of the same item in another year that could not be reopened because of the statute of limitations or some other rule of finality. In some cases the courts mitigated the resulting inequities through the application of the doctrines of estoppel or recoupment, but such decisions were neither uniform nor systematic. See S.Rep.No.1567, 75th Cong., 3d Sess. 49 (1938), 1939-1 (Part 2) Cum.Bull. 779, 815 (1939). Section 820 of the 1938 Code which became Section 3801 of the 1939 Code and Sections 1311-1314 of the 1954 Code supplied more definitive guideposts for dealing with such situations. Sections 1311-1314 list certain 'circumstances of adjustment,' such as the double inclusion or exclusion of an item of gross income or the double allowance or disallowance of a deduction, and provide in general that for one year from the date of the final determination resulting in such a situation the closed year may be reopened as against the party who maintained the position adopted by the determination.
 
 
 8
 The parties are in agreement that this case satisfies the requirements set forth in section 1311(a), which states the general rule for the mitigation of the statute of limitations:
 
 
 9
 '(a) General rule.-- If (1) a determination (as defined in section 1313) is (2) described in one or more of the paragraphs of section 1312 and, (3) on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then (4) the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.'
 
 
 10
 (1) The decision of the district court sustaining the estate's claim for a refund became final on September 19, 1958, at which time it was a 'determination' within the meaning of section 1313(a)(1):
 
 
 11
 '(a) Determination.-- For purposes of this part, the term 'determination' means--
 
 
 12
 '(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final * * *.'
 
 
 13
 (2) That determination presents the circumstance of adjustment described in section 1312(3)(A):
 
 
 14
 '(3) Double exclusion of an item of gross income.--
 
 
 15
 '(A) Items included in income.-- The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted * * * from the gross income of a related taxpayer * * *.'
 
 
 16
 The determination requires the exclusion from Gus's gross income of 54% Of the partnership income, on which Gus had previously paid tax and which was erroneously excluded from the gross income of Lena and the Lena and Elaine Trusts for 1944 and 1945.[2] In those taxable years the Elaine Trust and the Lena Trust or Lena were partners with Gus and were therefore related persons.[3] (3) On the date of the determination, correction of the erroneous exclusion was prevented by the statute of limitations. (4) The Commissioner has sought to correct the error by the assessment of a deficiency within one year of the date of the determination, as required by section 1314:
 
 
 17
 '(b) Method of adjustment.-- The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years. * * *'
 
 
 18
 The present case clearly meets all these requirements. The only controversy is with respect to two of the 'conditions necessary for adjustment' which are set forth in section 1311(b).
 
 
 19
 Taxpayers contend, first that Gus did not maintain an inconsistent position within the meaning of section 1311(b)(1):
 
 
 20
 '(1) Maintenance of an inconsistent position.-- Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if-- '(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.'
 
 
 21
 On its face, section 1311(b)(1) would seem to have been satisfied. The determination adopted the position maintained by Gus before the district court that the trusts and Lena were his partners and that their share of the partnership income should be excluded from his gross income, and that position was inconsistent with the erroneous exclusion of the allocable portions of the partnership income from the gross income of the trusts and Lena.
 
 
 22
 Taxpayers argue, however, that the legislative history of the Revenue Act of 1938 indicates that the predecessor of Sections 1311-1314 was intended only to prevent exploitation of the statute of limitations by 'active inconsistency.' They rely principally upon a statement in the Senate Finance Committee report that:
 
 
 23
 'The purpose of the Statute of Limitations to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute * * * The legislation here proposed is based upon the following principles: (1) to preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency * * *.'
 
 
 24
 S.Rep.No.1567, 75th Cong., 3d Sess. 49-50 (1938), 1939-1 (Part 2) Cum.Bull. 779, 815 (1939). See Commissioner v. Estate of Weinrich, 316 F.2d 97, 105 (9th Cir. 1963). In the present case, the argument continues, the taxpayers have not actively sought to exploit the statute of limitations. The taxpayers note that the original returns of Gus and the other taxpayers were consistent with each other and correct and that the Commissioner was advised to protect the government's position against the trusts, Lena, and Elaine at the time the estate made its claim for a refund. But for the Commissioner's erroneous determination that the trusts were not bona fide partners and the subsequent failure to protect the government's position before the statute of limitations had run, the present litigation need never have arisen. Taxpayers conclude that it is inequitable to remove the statutory bar as against them, when the difficulty was created by the actions of the government.
 
 
 25
 Taxpayer's argument, however, misconceives the nature of the mitigation of limitations provisions, which are remedial, not punitive. Cory v. Commissioner, 261 F.2d 702, 704 (2d Cir. 1958), cert. denied, 359 U.S. 966, 79 S.Ct. 877, 3 L.Ed.2d 834 (1959); Olin Mathieson Chem. Corp. v. United States, 265 F.2d 293 (7th Cir. 1959). The Senate Finance Committee report cited by taxpayers itself declares that the mitigation provisions are intended 'to take the profit out of inconsistency, whether exhibited by taxpayers or revenue agents, and whether fortuitous or the result of design.' S.Rep.No.1567, 75th Cong., 3d Sess. 49 (1938), 1939-1 (Part 2) Cum.Bull. 779, 815 (1939); accord, Albert W. Priest Trust, 6 T.C. 221, 226 (1946). Thus we conclude that the Senate Finance Committee did not use the term 'active inconsistency' in the pejorative sense that taxpayers seek to ascribe to it.[4] In fine, we are not persuaded that anything in the legislative history compels us to engraft upon the statute an additional criterion regarding the relative fault of the parties, such as that suggested by the taxpayers, which would detract from its remedial effectiveness. See United States v. Rachal, 312 F.2d 376, 383 (5th Cir. 1962); Mullock, The Inconsistent Position: Section 1311(b)(1), 12 Mercer L.Rev. 300, 307 (1961).
 
 
 26
 Nor do we accept taxpayers' contention that the mitigation provisions were not meant to apply in circumstances like the present because the Commissioner had an opportunity (upon learning that a refund claim had been filed on behalf of the estate of Gus Drechsler) to protect the position of the government prior to the running of the statute of limitations. As the Tax Court said in its opinion in the present case:
 
 
 27
 'While the mitigation provisions might have been formulated in terms of the Commissioner's or the taxpayer's ability to correct the error when the inconsistency involved was first brought to his attention, they were not so written. Instead, all that the provisions of sections 1311-1314 require is that correction of the error is prevented by the operation of any law or rule of law when the determination becomes final (Sections 1311(a) and 1313(a)(1)) and that the notice of deficiency or claim for refund making the correcting adjustment be sent within one year after such determination becomes final (Section 1314(b)). These conditions were met in the present cases.'
 
 
 28
 39 T.C. at 183-184.
 
 
 29
 The second provision upon which taxpayers rely is section 1311(b)(3):
 
 
 30
 '(3) Existence of relationship.-- In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency (except for cases described in section 1312(3)(B)), the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Tax Court of the United States for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination.'
 
 
 31
 Taxpayers contend that the inconsistent position referred to in section 1311(b)(3) was first maintained in 1949 when the refund claim was filed and when the requisite relationship no longer existed. But the legal position adopted by the determination was maintained both in Gus's original returns for 1944 and 1945, at which time taxpayers were partners,[5] and in the claim for a refund, which was filed after the partnership was terminated. The Commissioner argues, and the Tax Court held, that the inconsistent position referred to in Section 1311(b)(3) was first maintained when Gus's returns for 1944 and 1945 were filed.
 
 
 32
 Taxpayers point out that when the tax returns for 1944 and 1945 were filed there was no inconsistency between Gus's returns and the returns of the trusts and Lena in the treatment of the partnership income. The inconsistency did not arise, they say, until the partnership income originally reported by the trusts and Lena had been excluded from their gross income by the overassessments and the estate thereafter filed the claim for a refund. Thus, the argument concludes, Gus did not maintain an inconsistent position until the estate filed the refund claim.
 
 
 33
 After the decision of the Tax Court in the present case, the interpretation advanced by taxpayers was adopted by the Ninth Circuit in Commissioner v. Estate of Weinreich, 316 F.2d 97 (9th Cir. 1963), which involved a fact pattern substantially identical to that now before us. The analysis of the Ninth Circuit was essentially that the Senate Finance Committee's statement, quoted above, regarding the necessity of 'active inconsistency' was to be read into section 1311(b)(3), i.e. the parties must have been related when the taxpayer first maintained an actively inconsistent position.
 
 
 34
 We have given above our reasons for rejecting the view that the application of the statute requires a showing of 'active inconsistency' in the sense in which the taxpayer would have us interpret this phrase. The same reasons lead us to reject the authority of the Weinreich case.
 
 
 35
 The Commissioner argues in effect that taxpayers' stress on the word 'inconsistent' is misplaced and that the phrase 'inconsistent position' in section 1311(b)(3) is simply a short-hand reference to the position successfully maintained by the taxpayer, which, as prescribed by section 1311(b)(1), must be inconsistent with the erroneous exclusion. That is, section 1311(b)(3) requires only that the taxpayers be related when the successful position is first maintained, not when the inconsistency first occurs. See Plumb, The Problem of Related Taxpayers: A Procedural Study, 66 Harv.L.Rev. 225, 255-56 (1952); Ross v. United States, 148 F.Supp. 330 (D.Mass.1957).
 
 
 36
 We hold that the Tax Court was correct in sustaining the Commissioner's position, for this is the most natural reading of the language of the statute and best accords with the manifest purpose of section 1311(b)(3) to ensure that the related taxpayer has notice of the principal taxpayer's ultimate position during the period of the existence of the relationship.
 
 
 37
 From the foregoing analysis it follows that we uphold the Tax Court's conclusion that the taxpayers are liable for additional taxes under Sections 1311-1314.
 
 II.
 
 38
 Petitioner Elaine Yagoda contests the propriety of the Tax Court's ruling that as transferee of the Elaine Trust she was liable for taxes due from the trust to the extent of the assets she received upon the trust's termination. The Elaine Trust was terminated on November 12, 1958, after the determination of the district court upholding Gus's refund claim but prior to the deficiency notices that precipitated this litigation. Elaine acknowledges that a transferee is accountable for any accrued liability of the transferor, even though the amount owing may be determined subsequent to the transfer. See Meister v. Commissioner, 302 F.2d 54 (2d Cir. 1962); 9 Mertens, Federal Income Taxation 53.37 (Zimet ed. 1958). She contends, however, that a different rule applies here because the expiration of the limitations period extinguished the trust's tax liability, Diamond Gardner Corp., 38 T.C. 875 (1962) (alternative holding), and such liability was not revived until the Commissioner issued the statutory notice of deficiency. The Tax Court properly rejected this sophistic argument. At the time of the distribution of the trust's assets Elaine was chargeable with knowledge of the district court's determination and the consequent possibility that a deficiency would be levied against the trust. More appropriate circumstances for the application of transferee liability could scarcely be imagined.
 
 
 39
 We affirm the determination of the Tax Court.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 See footnote 5, infra
 
 
 [2]
 Since taxpayers did not receive the direct benefit of the overassessments, they can be held liable for a deficiency only if they consented to the crediting of the overassessments against Gus's tax liability and were therefore constructively benefited. See Murray v. United States, 292 F.2d 602 (1st Cir. 1961), judgment on first remand rev'd, 300 F.2d 804 (1962), judgment on second remand aff'd, 316 F.2d 29 (1963). Taxpayers contend that the Commissioner failed to prove such consent. Although the burden of proof was on the government on this issue, Murray v. United States, supra, we think consent must be inferred because of the interrelationships of the parties in this case. At the time the overassessments were made and Gus's net deficiency was paid, Lena Drechsler was executor of Gus's estate, sole beneficiary of the trust for the benefit of Lena Drechsler, and sole trustee of the trust for the benefit of Elaine Drechsler. In her various capacities she acted for all the parties involved
 
 
 [3]
 Section 1313(c) provides:
 'For purposes of this part, the term 'related taxpayer' means a taxpayer who, with the taxpayer with respect to whom a determination is made, stood, in the taxable year with respect to which the erroneous inclusion, exclusion, omission, allowance, or disallowance was made, in one of the following relationships: '(6) partner * * *.'
 
 
 [4]
 The authority of the Senate Finance Committee Report may be thought of as somewhat impaired by the fact that the predecessor to section 1311(b)(1) was not added to the statute until the conference committee, H.R.Rep. No. 2330, 75th Cong. 3d Sess. (1938), 1939-1 (Part 2) Cum.Bull. 817, 836-37 (1939) (report of House managers on conference)
 
 
 [5]
 The parties have stipulated that the T. F. Jackson Company partnership 'terminated its business and existence on August 31, 1945, but thereafter such actions were taken as were necessary to wind up its affairs and make final distribution of its assets.' From this taxpayers argue that the partnership relationship had terminated prior to the filing of Gus's return for 1945. The Tax Court held that the partnership was only dissolved on August 31, 1945, and was not terminated until July 21, 1947, when the final distribution of partnership assets was made. That determination is not clearly erroneous. See Treas.Reg. 1.708-1(b)(1)(i); 6 Mertens, Federal Income Taxation 35.71 (Zimet ed. 1957)