Herbert **BIRCHENOUGH** and **Edith Birchenough**

v.

The **UNITED STATES**.

John J. **HURTZ** and **Julia R. Hurtz**

v.

The **UNITED STATES**.
Nos. 49–67, 52–67.

United States Court of Claims.

May 16, 1969.

Jerome M. Lynes, Newark, N. J., for plaintiffs; Joseph M. Nolan, Newark, N. J., attorney of record. Nolan & Lynes and Ernest R. Nuzzo, Newark, N. J., of counsel.

Joseph Kovner, Washington, D.C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Philip R. Miller and Ira M. Langer, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

During the years 1949 through 1954 the stock of a small New Jersey corporation was wholly owned by the plaintiffs, two pairs of husbands and wives. In 1950, 1951, and 1952, amounts of $4,000, $4,800 and $4,800 were entered in the company's books as accrued salaries of each of the husbands;[1] for 1952, $250 was accrued as salaries of the wives. These sums were actually paid to plaintiffs in 1954, but were not reported by them for income tax purposes in that year—nor were they reported in 1950, 1951, and 1952. The Internal Revenue Service assessed deficiencies for 1954 on account of the failure to include these amounts. The deficiencies were paid and suit for refund was brought in this court.

The basis of that suit was that the $13,850 in salaries received by each family in 1954 were not includable in gross income for 1954 because those sums were constructively received in 1950, 1951, and 1952, and were taxable only in those years. The court agreed with this contention and entered judgment for both sets of plaintiffs, granting refunds for 1954. Hurtz v. United States, No. 324–60, and Birchenough v. United States, No. 325–60, 162 Ct.Cl. 855 (1963).[2]

The refunds were made as ordered by the court, and the Internal Revenue Service, acting under the mitigation provisions (Sections 1311–1315) of the 1954 Code, then assessed deficiencies for the years 1950, 1951, and 1952 (which were otherwise closed by the statute of limitations).[3] These deficiencies, too, were paid by the plaintiffs, who again brought suit here (on disallowance of their refund claims), asserting that the mitigation provisions do not authorize the assessment for the barred years. The facts are not in controversy and both parties have asked for summary judgment.

Defendant relies only on Section 1312(3) (A), headed "Double exclusion of an item of gross income". Taken together with the relevant parts of Sections 1311 and 1313,[4] that subsection permits a readjustment of a taxable year, despite the limitations bar, if four conditions are met: (1) a "determination" excluded an item from the taxpayers' gross income in one year (1954); (2) this "determination" adopted a position maintained by the taxpayers which is inconsistent with the exclusion of that same item of income in another year (1950–1952); (3) the taxpayers excluded the item from gross income in that other year (1950–1952); and (4) the taxpayers paid tax on the item for the year in which the "determination" held it excludable (1954).

There is no dispute as to the first and third of these factors. Our prior judgment constitutes a "determination" as defined in Section 1313(a) (1), Appendix, *infra;* that decision excluded the salaries in question from taxpayers' gross income for 1954 solely because they should have been included in 1950–1952. 162 Ct.Cl. at 857–859. There is agreement, in addition, that the items constituted taxable income, and that plaintiffs omitted them from their re-

---

1. The husbands also received cash sums during those three years.

2. The judgment was entered on July 24, 1963. In No. 324–60, it provided for $9,970.17, plus statutory interest from June 26, 1959 (when the deficiency was paid), to date of payment. In No. 325–60, the judgment was for $10,172.91, plus statutory interest from June 26, 1959 (date of payment of the deficiency), to date of payment.

3. For the Hurtzes, the deficiency assessment amounted to $8,431.70 in tax and $6,316.87 in interest, a total of $14,748.-57. For the Birchenoughs, the amounts were $8,326.14 in tax and $6,231.84 in interest, totaling $14,557.98.

4. The pertinent provisions of the 1954 Code and the regulations are set forth in the Appendix.

turns in the earlier years. See finding 7, 162 Ct.Cl. at 860–861.[5]

The controversy is over the second and fourth conditions. Taxpayers admit, and must admit, that the contention adopted by the court in our prior case was one they put forward. They affirmatively argued that the $13,850 paid them in 1954 was not includable in that year because constructively received in 1950, 1951, and 1952 (162 Ct.Cl. at 857) —as against the Government's argument that 1954 was the only proper year (162 Ct.Cl. at 858, 859). Nor can it be denied that to urge that an item is includable only in 1950–1952 is necessarily inconsistent with the contention that it is includable only in 1954. See Dobson v. United States, 330 F.2d 646, 165 Ct.Cl. 460 (1964); Karpe v. United States, 335 F.2d 454, 461, 167 Ct.Cl. 280, 292–293 (1964), cert. denied, 379 U.S. 964, 85 S.Ct. 665, 13 L.Ed.2d 558 (1965); Heineman v. United States, 391 F.2d 648, 183 Ct.Cl. 17 (1968).

But taxpayers strongly assert that this argument, though maintained by them, was not a "position" within the meaning of the mitigation provisions. Their point is that they simply raised includability in 1950–1952 as a defense to the Government's assertion that 1954 was the correct taxable period, and they claim that a taxpayer's raising of a defense to an Internal Revenue Service position is not the maintenance of an "inconsistent position" under the mitigation statute.

▮▮▮ The Code and the decisions do not bear them out. Section 1311(b) (1) (B) says that a prerequisite to an adjustment is the adoption "in the determination [of] a position maintained by the taxpayer with respect to whom the determination is made, and the position maintained * * * by the taxpayer * * * is inconsistent with the erro-

neous * * * exclusion * * *." There is no distinction between positions which are "aggressive" or "defensive" in form. In fact, if taxpayers were right, no case in the Tax Court and few refund decisions could serve as a "determination" since in the former the taxpayer is always responding to a deficiency asserted by the Service, and most often refund suits follow upon the payment of deficiency assessments. There is no suggestion in the legislative history that the mitigation device was to be limited to the very few instances in which a taxpayer takes inconsistent positions completely on his own, not in any way responding to some Service action such as the finding of a deficiency.[6] The Senate Finance Committee suggested a broader sweep when it said that the purpose was to take "the profit out of inconsistency, whether exhibited by taxpayers or revenue officials and whether fortuitous or the result of design." S. Rep. No. 1567, 75th Cong., 3d Sess. 49 (1938), 1939–1 (Part 2) Cum.Bull. 779, 815. As shown infra, the regulations have always contemplated that the provision could be triggered by a "determination" embodying a taxpayer's inconsistent position taken in response to a deficiency assessment.

No case supports taxpayers' extremely narrow interpretation. In Dobson v. United States, supra, 330 F.2d 646, 165 Ct.Cl. 460, this court held that by claiming before the Tax Court, on appeal from a deficiency, that income was recognizable in 1949 rather than 1948, those plaintiffs had maintained a position inconsistent with their exclusion of the item from their 1949 returns. See, also, Karpe v. United States, supra, 335 F.2d at 456–457, 461, 167 Ct.Cl. at 283–285, 292 (prior "determination" was a district court refund suit); Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485 (C.A. 2) cert. denied, 379 U.S.

---

5. As indicated above, plaintiffs included these salaries in neither their returns for 1950–1952 nor for 1954. There is also no dispute that taxpayers were on the cash basis.

6. Section 1313(a) defines "determination" in terms of "a decision by the Tax Court", as well as "a judgment, decree, or other order by any court of competent jurisdiction".

842, 85 S.Ct. 81, 13 L.Ed.2d 48 (1964) (the same); *cf.* Heineman v. United States, *supra*, 391 F.2d at 651–652, 183 Ct.Cl. at 22–24.

▇▇ Insofar as taxpayers claim that the inconsistency must be an "active" one, their conduct in the prior litigation fits that characterization, however it be construed. *Cf.* Heineman v. United States, *supra.* They were by no means passive parties, merely accepting or acquiescing in a position presented by the Internal Revenue Service. Rather, they brought the refund suit, and then deliberately maintained, put forward, and pressed upon the court, over opposition, the position that was adopted and reflected in our opinion and judgment. Moreover, the years 1950–1952 were no longer open when plaintiffs filed their refund suit for 1954. Even under the view of "active inconsistency" formulated in Commissioner of Internal Revenue, v. Estate of Weinreich, 316 F.2d 97, 105 (C.A. 9, 1963), it is clear that plaintiff-taxpayers actively urged and maintained the stand which led to the inconsistency.[7]

▇▇ Nor is it relevant to the operation of Section 1312(3) (A) that the Government has also shown inconsistency, in a sense, by arguing earlier that 1954 was the correct year, and now maintaining the rightness of 1950–1952. The provision was designed, among other things, to allow the Government to make corrections after a court ruling had revealed the error in the Service's initial position. The Government's "fault" in taking its first view—at least if it was done in good faith—was not to prevent it from collecting the revenue or to absolve the taxpayer from all tax on the item.[8] Once the "determination" showed the error in the prior Service position, the Service could accept the court's ruling, where the item had been entirely excluded, and correct the mistake —despite the passage of the limitations period—because of the taxpayer's own inconsistency. That is the way Congress wrote the subsection which it considered to be remedial, not punitive. *See* Yagoda v. Commissioner of Internal Revenue, *supra*, 331 F.2d at 490–91; 2 Mertens, Law of Federal Income Taxation §§ 14-01–.04, 14.07 (Malone rev. 1967). After all, "the overriding purpose of Section 3801 [of the 1939 Code, now Sections 1311–1315 of the 1954 Code] is to permit an equitable adjustment by treating an error as if it had never existed." United States v. Rachal, 312 F.2d 376, 383 (C.A. 5, 1962).

▇▇ The other disputed requirement of Section 1312(3) (A) is whether the accrued salaries constituted items "with respect to which tax was paid" for 1954 —the fourth condition listed previously. This part of the statute, dealing with "[d]ouble exclusion of an item of gross income", declares that the item must have been included in a return filed by the taxpayer *or* the tax must have been paid. In this case the items were never included in any returns, and therefore applicability turns on payment of the tax. Of course, taxpayers satisfied the deficiencies assessed for 1954 on account of the salaries in question,[9] but the argument is that payments-induced-by-deficiency-assessments are not what the statute means by payment of the tax. On this point taxpayers are squarely faced by the Regulations, which, for almost thirty years, have indicated, by a specific example illustrating the reach of the statutory provision, that such payments are affirmatively included. See Example (1) to § 19.3801(b)–3 of Treasury Regulations 103 (1939 Code); 26 C.F.R. § 19.3801(b)–3 (Supp.1940) (is-

---

7. We do not have to decide whether we would agree with the *Weinreich* result on the facts of that case. That holding has been criticized in Yagoda v. Commissioner of Internal Revenue, *supra*, 331 F.2d at 490–492.

8. There is nothing to suggest that the Government acted in bad faith, or by way of subterfuge, in pressing the position that 1954 was the proper year.

9. These deficiencies were paid on June 26, 1959. See note 2, *supra.*

sued Jan. 29, 1940, and effective until the 1956 revision of the Regulations; see Regs. 111, § 29.3801(b)–3; 26 C.F.R. § 29.3801(b)–3 (1949) ); and Example (1) (ii) to § 1.1312–3 of Treasury Regulations on Income Tax (1954 Code) (issued Feb. 9, 1956); 26 C.F.R. § 1.-1312–3 (Rev.1956), Appendix infra.

■■ We have no sufficient reason to reject this regulation, which goes back almost to the original adoption of the mitigation provisions.[10] There is no strain on the statutory language to include satisfaction of a deficiency in the general category of tax payments, nor does it conflict with the general Congressional purpose to allow adjustments where otherwise an income item would be entirely freed from tax and the taxpayer has acted inconsistently. The only argument plaintiffs can make is that the regulation disfavors taxpayers who choose to pay the deficiency and then litigate by refund suit, rather than to defer payment and sue in the Tax Court; the former are subject to adjustment under Section 1312(3) (A) (because they have paid the tax) while the others are not. In an early and authoritative article, then Professors Maguire, Surrey and Traynor gave the "sound reason * * * for such rigid dichotomy" (Section 820 of the Revenue Act of 1938, 48 Yale L.J. 719, 755–57 (1939)).[11] There is no way to distinguish, these commentators pointed out, between a taxpayer who "may have paid the deficiency because he thought it correct but later decided to change his position because of the favorable opportunity presented by the expiration of the period of limitations for the earlier year" and another taxpayer who pays the deficiency solely because he prefers to litigate by refund action rather than before the Tax Court. "As there is no feasible method of differentiating between the two cases, and as the taxpayer against whom the deficiency is asserted can protect himself from an adjustment * * * simply by not paying the deficiency, no ·"unjustifiable hardship is worked by the rule * * *." Certainly, this ground is adequate to support the contemporaneous regulation, which must be accepted unless we can say that it is unreasonable or flouts the Congressional will. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 503, 68 S.Ct. 695, 92 L.Ed. 831 (1948); United States v. Manufacturers Nat. Bank, 363 U.S. 194, 200 n. 8, 80 S.Ct. 1103, 4 L.Ed.2d 1158 (1960); Estate of Bahen v. United States, 305 F.2d 827, 829, 158 Ct.Cl. 141, 145 (1962).[12]

Since all the conditions imposed by Section 1312(3) (A) are fulfilled here, plaintiffs' taxes for 1950–1952 were subject to adjustment and the deficiencies assessed against them were correct. They are not entitled to recover, their motion for summary judgment is denied, and the Government's cross-motion is granted. The petitions are dismissed.

SKELTON, Judge (dissenting).

I respectfully dissent. The government erroneously assessed deficiencies for the year 1954 for salaries of plain-

---

10. The pertinent mitigation provisions were first enacted by Section 820(b) (3) of the Revenue Act of 1938, Ch. 289, § 820, 52 Stat. 581–583, and were re-enacted by Section 3801(b) (3) of the 1939 Code, 53 Stat. 471–473. There is no difference, relevant to this case, between those provisions and Section 1312(3) (A) of the 1954 Code, applicable here.

11. This article appeared before the 1940 regulations, and treated the distinction between refund and Tax Court taxpayers as clearly imbedded in the mitigation statute itself.

12. So far as we can tell, the commentators appear to accept the regulation. See 2 Mertens, Law of Federal Income Taxation § 14.07 (Malone rev. 1967); Holland, Tax Consequences of Inconsistent Positions—A Review of Section 3801, N.Y.U. 10th Inst. on Fed. Tax. 807, 815–16 (1952); Goetten, 3801 Brought Up to Date, N.Y.U. 13th Inst. on Fed. Tax. 1119, 1133–34 (1955). See also the Maguire, Surrey, and Traynor article, supra, which antedates the regulation.

tiffs which accrued in 1950, 1951, and 1952. In the resulting lawsuit, this court ruled against the government and in favor of the taxpayers. Thereafter, the Internal Revenue Service then assessed deficiencies under Sections 1311–1315 of the Internal Revenue Code of 1954 for the years 1950, 1951, and 1952, which were otherwise closed by the statute of limitations, plus interest. These deficiencies were paid and plaintiffs sued here claiming the above regulations do not authorize the assessment for the barred years. I agree with the plaintiffs for the reason that one of the requirements of Section 1312(3) (A), in order for an adjustment of a barred year to be made, is that the tax must have been paid for the year (1954) which the government initially contended was the proper one and for which it assessed the tax. This section of the statute says that the item must have been included in a return filed by the taxpayer or "the tax must have been paid" before the government can adjust and assess the taxes for a barred year. The government insists here that this requirement was complied with because the taxpayers paid the deficiency for 1954 and then sued for a refund. The taxpayers say that this "forced payment" on their part is not what the regulation meant by the provision "or the tax must have been paid." I agree. In my opinion, this means a voluntary payment of the tax and no one made at "pistol point." Anyone experienced in tax matters knows that when the Internal Revenue Service levies a deficiency assessment against a taxpayer, if he does not pay the tax, the IRS can levy on and sell his property at public auction as a forced sale and the taxpayer is powerless to stop it, except by paying the tax. This is what occurred here.

The regulation (Section 1312(3) (A)) is discriminatory and invalid in my opinion, because it allows an adjustment to be made for barred years where the taxpayer has paid the tax, but does not allow such an adjustment where the tax has not been paid. This discriminates between the taxpayer who pays the tax and sues for a refund in this court or the district court and one who refuses to pay the tax and sues in the Tax Court. I do not believe the Congress ever intended such a result. In any event, I believe the regulation contemplated a voluntary payment of the tax and not one that was forced upon the taxpayer as in this case.

Every taxpayer should pay the taxes he owes. That has not been done here. To that extent the taxpayer is wrong. On the other hand, the government is seeking to force the taxpayer to pay not only the taxes, but also 18 years' interest because of the erroneous position taken by the government in the first place. In that connection, the equity is on the side of the taxpayer.

I would grant plaintiffs' motion for summary judgment and deny that of the defendant.

## APPENDIX

Internal Revenue Code of 1954:

§ 1311.  Correction of error.

(a) *General Rule.* If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) *Conditions Necessary for Adjustment.*

(1) *Maintenance of an inconsistent position.* * * * an adjustment shall be made under this part only if—

\*   \*   \*   \*   \*   \*

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under

section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position * * * maintained by the taxpayer in the case described in subparagraph (B) [of Section 1312] is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

\*     \*     \*     \*     \*     \*

§ 1312.  Circumstances of adjustment.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\*     \*     \*     \*     \*     \*

(3) *Double exclusion of an item of gross income.*

(A) *Items included in income.* The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; or

(B) *Items not included in income.* The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

\*     \*     \*     \*     \*     \*

§ 1313.  DEFINITIONS.

(a) *Determination.* For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

\*     \*     \*     \*     \*     \*

Treasury Regulations on Income Tax (1954 Code):

§ 1.1312–3  *Double exclusion of an item of gross income.*

(a) *Items included in income or with respect to which a tax was paid.* (1) Paragraph (3) (A) of section 1312 applies if the determination requires the exclusion, from a taxpayer's gross income, of an item included in a return filed by the taxpayer, or with respect to which tax was paid, and which was erroneously excluded or omitted from the gross income of the same taxpayer for another taxable year or of a related taxpayer for the same or another taxable year.

(2) The application of subparagraph (1) of this paragraph may be illustrated by the following examples:

*Example (1).* (i) A taxpayer received payments in 1951 under a contract for the performance of services and included the payments in his return for that year. After the expiration of the period of limitations for the assessment of a deficiency for 1950, the Commissioner issued a notice of deficiency to the taxpayer for the year 1951 based upon adjustments to other items, and the taxpayer filed a petition with the Tax Court of the United States and maintained in the proceeding before the Tax Court that he kept his books on the accrual basis and that the payments received in 1951 were on income that had accrued and was properly taxable in 1950. A final decision of the Tax Court was rendered in 1955 excluding the payments from 1951 income. An adjustment in favor of the Commissioner is authorized with respect to the year 1950, whether or not a tax had been paid on the income reported in the 1951 return.

(ii) Assume the same facts as in (i), except that the taxpayer had not included the payments in any return and had not paid a tax thereon. No adjustment would be authorized under section 1312 (3) (A) with respect to the year 1950. If

the taxpayer, however, had paid a deficiency asserted for 1951 based upon the inclusion of the payments in 1951 income and thereafter successfully sued for refund thereof, an adjustment would be authorized with respect to the year 1950. (See paragraph (b) of this section for circumstances under which correction is authorized with respect to items not included in income and on which a tax was not paid.)