**A. H. KARPE**

v.

**The UNITED STATES.**

**The UNITED STATES (Cross-Complainant)**

v.

**Birda M. VIERA (Cross-Defendant).**

**No. 161–59.**

United States Court of Claims.

July 17, 1964.

J. Everett Blum, Beverly Hills, Cal., for plaintiff. Lloyd G. Rainey, Beverly Hills, Cal., on the brief.

Stephen E. Wall, Bakersfield, Cal., for third party, Birda M. Viera. Baker, Palmer, Wall & Raymond, Bakersfield, Cal., on the brief.

Cynthia Holcomb, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., on the brief.

Before JONES, Senior Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

LARAMORE, Judge.

This is a suit by plaintiff, A. H. Karpe, to recover $55,868.05 in income taxes, plus interest, for the year 1944, which were assessed against cross-defendant, Birda M. Viera, but paid by plaintiff by means of crediting his overassessment to her deficiency. The first question presented in this case is whether the mitigation statutes, sections 1311–1315 of the Internal Revenue Code of 1954, permit the assessment of the deficiency against cross-defendant. In the event the taxes were properly assessed, then we must determine whether plaintiff was obligated to pay the resulting deficiency under the terms of a property settlement agreement entered into between plaintiff and cross-defendant, his former wife. In connection with this second issue, plaintiff has raised the defense that cross-defendant by her failure to fully cooperate in contesting the assessed deficiency breached the agreement, thus. relieving plaintiff of his obligation to pay the additional taxes.

During the year in issue, 1944, plaintiff, and cross-defendant were husband and wife living in California, a community property state.[1] In preparing their separate Federal income tax returns for that year, they divided family income between separate and community by applying the formula approved in Parker v. Commissioner, 31 B.T.A. 644 (1934).

1. Under California law the salaries of the spouses are community property, owned one-half by each spouse, but capital acquired prior to the marriage and the earnings it produces during the marriage are the separate property of the spouse owning the capital. Cal.Civil Code, §§ 163–164.

Under that formula, 69.2 percent of the total family income was ultimately reported by plaintiff as separate income and the remaining 30.8 percent was considered community income reportable one-half by each spouse. Cross-defendant did not have any separate income for the year in issue.

In 1949 the Commissioner of Internal Revenue discovered that plaintiff had fraudulently failed to include $225,000 as income in his 1944 Federal income tax return. As a result of the discovery of this fraudulently omitted income, the Commissioner assessed plaintiff additional taxes, fraud penalties, and interest. In so doing, the Commissioner allocated to plaintiff 69.2 percent of the unreported income as separate income and 30.8 percent as community income, one-half reportable by plaintiff. The Commissioner also in 1949 assessed cross-defendant a deficiency on the resulting increase in her share of the community income. The manner in which the omitted income was allocated by the Commissioner among separate and community income was in conformity with the formula used by plaintiff in his 1944 tax return. The resulting deficiency, interest, and fraud penalties were paid by the parties in 1949 and 1950.

Plaintiff in 1954 instituted a suit for refund in the U.S. District Court for the Southern District of California claiming that a larger portion of the family income for the year in issue was community income reportable one-half by each spouse rather than separate income reportable solely by him.[2] The basis for his claim was that the income derived from his business "was primarily due to his personal activities, management, skill, judgment and hard work,"[3] and thus constituted community income. Plaintiff further contended that his separate income was to be determined under controlling California law[4] by crediting his separate capital, i. e., that amount of capital which was employed in his business at the time of his marriage, "with the usual rate of interest prevailing during the subject period on a well secured long-term investment."[5] Under his theory, the excess of family income left after his separate capital had been credited with the appropriate rate of return, constituted community income since this excess was wholly due to the unique and extraordinary nature of his personal services performed in the production of that income.

The District Court partially agreed with plaintiff that a larger portion of the family income for the year in issue was community income rather than separate income as originally reported by plaintiff and allocated by the Commissioner of Internal Revenue.[6] The trial court determined that $60,000 of the family income was attributable to plaintiff's "personal services and labors in the conduct of his farming ventures and farm equipment business."[7] Then the court found that "a return before income taxes of eight percent per annum on invested capital is reasonable and could be expected from an investment in a business like that of the plaintiff for the year 1944."[8] The court went on and determined that since the return on his separate capital plus the amount allocated as remunera-

2. The net effect of plaintiff's claim would be to reduce his total income, thereby reducing the amount by which it was fraudulently understated and reducing the companion interest and fraud penalties assessed against plaintiff. Cross-defendant was not chargeable with fraud and no fraud penalty was assessed against her.

3. Plaintiff's brief in Karpe v. Riddell, No. 1357–N.D.–Civil, p. 11.

4. The ownership of income in a community property state is to be determined under state law. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (1930); United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714 (1931).

5. Supra, footnote 3 at p. 12.

6. Karpe v. Riddell, 51 A.F.T.R. 1522 (1956).

7. Id. at 1523.

8. Ibid.

tion for his services was less than the total family income, the excess was "in large part attributable to intangibles" constituting both separate and community income. The court used the Parker formula to allocate this excess in the same proportion as the computed separate and community income bear to each other.[9] Thus under the District Court's decision, only 50.77 percent of the family income was plaintiff's separate income as compared to 69.2 as originally reported, and 49.23 percent of the family income was community income, reportable one-half by each spouse, instead of the 30.8 percent originally used. The result of the determination was that plaintiff's separate income was decreased with the concomitant increase in the community income reportable one-half by each spouse. As a consequence of this reallocation of the parties' family income, plaintiff had a total overpayment of about $97,000 including both fraud penalties and interest.[10] Since the District Court's determination increased the amount of family income which was considered community income, cross-defendant's share of that income increased with the result that she underpaid her taxes for the year in issue in the sum of about $55,000.

Within six months after the District Court's decision became final, cross-defendant was sent a statutory notice of deficiency proposing an assessment of additional taxes for the year 1944 under the mitigation provisions of the Internal Revenue Code of 1954. Cross-defendant failed to file a petition in the Tax Court within 90 days after receipt of the statutory notice of deficiency. Plaintiff's overassessment for 1944, as determined by the District Court, was credited in payment of cross-defendant's resulting deficiency. The balance of plaintiff's overassessment for that year was refund-ed to him. The government by crediting plaintiff's overassessment in payment of cross-defendant's resulting deficiency, purported to act pursuant to the property settlement agreement entered into between plaintiff and cross-defendant, in which it was provided, *inter alia,* that plaintiff would pay any tax deficiencies assessed against either of them for the years of their marriage.[11]

In 1959 plaintiff filed this suit on the judgment he had obtained in the District Court,[12] claiming that (1) the statute of limitations for the assessment and collection against cross-defendant for the year 1944 had run. (In connection with this contention, plaintiff asserts that by defendant's failure to specifically plead the application of sections 1311 through 1314 of the Internal Revenue Code of 1954, which in certain prescribed circumstances mitigates the bar of the statute of limitations, it has not placed said sections in issue before the court and, therefore, cannot avail itself of the provisions to justify what would otherwise be a time-barred assessment); (2) even if the mitigation sections are properly before us, their provisions are not applicable in the instant case, since (a) the District Court's determination did not require a double exclusion of an item of gross income as required by section 1312 (3) (A) which prescribes those circumstances under which the application of the statute of limitations is mitigated by section 1311, and (b) the District Court in its determination did not adopt plaintiff's inconsistent position as required by section 1311(b) (1) (B); (3) in the event that the mitigation sections are applicable to the instant case, defendant cannot use the property settlement agreement entered into by plaintiff and cross-defendant for authority to credit his overassessment with cross-defendant's resulting deficiency; (4) in the

---

9. Ibid.

10. Under the District Court determination plaintiff overpaid his taxes in the sum of about $55,000, his fraud penalty in the sum of about $28,000, and his interest in the sum of about $14,000.

11. The pertinent parts of the agreement are fully set out in our findings of fact numbered 22 and 23.

12. Plaintiff first filed suit in the U.S. District Court where the complaint was dismissed for lack of jurisdiction.

event that under the property settlement agreement defendant could properly credit his overpayment, cross-defendant by her failure to cooperate fully in contesting the assessed deficiency breached the agreement, thus relieving plaintiff of his obligation to pay the additional taxes.

## I

■ We address ourselves first to plaintiff's procedural issue. Plaintiff raises the contention that by defendant's failure to specifically plead the application of sections 1311 through 1314 of the 1954 Code, it cannot now invoke said sections as an exception· to the application of the statute of limitations as a bar to the assessment of cross-defendant's deficiency for the year in issue.

Rule 22(b), formerly Rule 18, of the Rules of this court, states in pertinent part, as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

At the trial the parties through their respective counsel entered into an agreement whereby they stipulated to certain facts. One of their stipulations states in pertinent part, as follows:

"On August 2, 1957, Birda M. Karpe [cross-defendant] was sent a statutory notice of deficiency, a copy of which is attached as Exhibit B."

Attached to the standard form statutory notice of deficiency and part of joint exhibit B is a statement which, in part, states as follows:

"The deficiency shown herein is asserted under the provisions of section 1314 of the Internal Revenue Code of 1954 and corresponding provisions of the Internal Revenue Code of 1939."

Under these circumstances, it is fair to say that the issue whether or not cross-defendant's deficiency was *properly* assessed within the provisions of the mitigation sections, was at least tried by the implied consent of the parties. The record, as shown above, clearly established that cross-defendant's deficiency was asserted under the provisions of section 1314 of the 1954 Code. Consequently, the mitigation sections are properly before us and there is no procedural obstacle which prevents us from passing on the merits of this issue.

## II

■ We turn now to the merits of the application of section 1311 et seq. of the 1954 Code. These provisions were designed to mitigate the bar of the statute of limitations on either an assessment by the government or a refund to the taxpayer where the statute of limitations would serve to create either a double taxation or a double escape from taxation. Section 1311(a) [13] sets forth the basic conditions which have to be met for the operation of the mitigation sections. They are as follows: (1) there must be a determination as defined in section 1313, (2) the determination must come within one of the categories described in section 1312 as a circumstance of adjustment, (3) correction of the effect of the error by means of the normal procedures must be prevented, and (4) an in-

13. Section 1311(a) reads as follows: "(a) *General Rule.*—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner· specified ·in section 1314."

consistent position must have been asserted in the manner described in section 1311(b). If these conditions are met, then the amount of the adjustment must be computed in accordance with section 1314(a) and the adjustment must be made in the manner prescribed in section 1314(a).

In the instant case, there is no dispute that conditions (1) and (3) have been met. The District Court's judgment in Karpe v. Riddell, supra, which became final on February 18, 1957, is a determination within the meaning of section 1313(a) (1). On the date that this judgment became final, the assessment of the resulting deficiency in cross-defendant's income for 1944 was prevented by the statute of limitations. The controversy between the parties is with respect to conditions (2) and (4).

The government contends that the circumstance of adjustment in the case is the double exclusion of an item of gross income as described in section 1312(3) (A):

"(3) *Double exclusion of an item of gross income.*—

"(A) *Items included in income.*— The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted * * * from the gross income of a related taxpayer [cross-defendant] * *."

■ The area of dispute [14] between the parties centers on the meaning of the statutory word "item" of gross income contained in section 1312(3) (A). Plaintiff argues that the determination made by the District Court was merely to change the division between separate and community income. Plaintiff points

out that no single item of income reported in plaintiff's income tax return filed for the year 1944 or added by audits of said return was involved in the District Court suit. Plaintiff goes on and states that "[t]he sole issue was the correctness of the division of all of the gross income between separate income and community income." [15] Plaintiff seems to argue that the statutory word "item," as used in section 1312(3) (A) is strictly a qualitative one, synonymous with "type". Thus, under plaintiff's argument, before an amount of gross income can be an "item" of gross income within the meaning of section 1312, the amount must be reflected as a separate entry (a sum specified) in the taxpayer's tax return for the year in issue.

We do not think that the statutory word "item" should be given such a limited interpretation. In Gooch Milling & Elevator Co. v. United States, 78 F. Supp. 94, 100, 111 Ct.Cl. 576, 586 (1948), we described an "item" as follows:

"* * * The term 'item' was not defined or limited by Congress, and in our opinion it should be interpreted to include any item or amount which affects gross income in more than one year, and produces, as a result, double taxation, double deduction or inequitable avoidance of tax."

Accord: Gill v. Commissioner, 306 F.2d 902, 906 (5th Cir. 1962), (citing the above-quoted language with approval); Dubuque Packing Co. v. United States, 126 F.Supp. 796 (N.D.Iowa 1954), aff'd 233 F.2d 453 (8th Cir. 1956).

Plaintiff's argument that before an amount of gross income can be an "item" of gross income within the meaning of section 1312 it must be reflected as a separate entry in the taxpayer's tax return, is too restrictive to carry out the

14. There is no dispute that cross-defendant is a "related taxpayer" as prescribed in section 1313(c) which defines related taxpayer as "* * * a taxpayer who, with the taxpayer with respect to whom a determination is made, stood, in the taxable

year with respect to which the erroneous inclusion, * * * was made, in one of the following relationships:
"(1) husband and wife, * * *."
During the year 1944 plaintiff and cross-defendant were husband and wife.

15. Plaintiff's reply brief, p. 4.

apparent congressional intent.[16] We believe that Congress intended us to view an "item" of gross income as anything "specific and identifiable" by which such income is "directly affected."[17] Under our postulated test, the District Court's determination clearly "directly affected" plaintiff's and cross-defendant's total gross income for the year in issue; it reduced plaintiff's total income with the concomitant increase in cross-defendant's total income for that year. There is no doubt that the source of this amount was "specific and identifiable." The District Court's determination required that part of those amounts which have been previously classified as separate income and reported solely by plaintiff be included in the parties' community income reportable one-half by each spouse.

Thus it can be seen that although as plaintiff correctly points out that the District Court was primarily concerned with the proper division of the parties' separate and community income, the effect of that division was to require "the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid (one-half of the amount determined to be community income which had previously been reported as separate income) and which was erroneously excluded or omitted from the gross income of a related taxpayer [cross-defendant]."

Thus we hold that the amount of income which was excluded from plaintiff's gross income and which was required to be included in the gross income of cross-defendant was an "item" of gross income within the meaning of section 1312. It follows that the determination in the instant case comes within the "circumstances of adjustment" described in section 1312(3) (A).

We turn now to the last condition which has to be met before the mitigation sections can be properly invoked. Section 1311(b) (1) (B) in pertinent part requires that an adjustment shall be made under this part only if—

"(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, and the position * * maintained by the taxpayer in the

16. We are aware that a number of courts when called upon to apply these sections have adopted the view that since the sections are in derogation of the statute of limitations they should be strictly construed. E.g., Central Hanover Bank & Trust Co. v. United States, 163 F.2d 60, 63 (2d Cir. 1947); American Foundation Co., 2 T.C. 502 (1943). In the past we have characterized the mitigation statute as a "relief provision" which "should, if necessary, be given a liberal interpretation in order fully to carry out its apparent purpose." Gooch Milling & Elevator Co. v. United States, supra, 78 F.Supp. at 100, 111 Ct.Cl. at 587. It has been suggested, however, that "an analysis of cases suggests that the potentiality for error latent in the conscious adoption of either general canon weighs in favor of subordinating both to a more particularized and purposive interpretive technique." Note, 72 Harv.L.Rev. 1536, 1546–47 (1959). We agree that the application of the mitigation sections should not be sustained or denied merely on the basis of the interpretive philosophy adopted by the court. However, the complexity of the sections (see Judge Clark's comments in Cory v. Commissioner, 261 F.2d 702, 704 (2d Cir. 1958), and the inexactness with which such key terms as "items of income" are defined and used, require us to use as a starting point of our analysis the apparent congressional intent in enacting these sections. We believe that they were enacted with the view that "disputes as to the year in which income or deductions belong [and in this case disputes as to which of two related taxpayers should include amounts of gross income] * * * should never result in a double tax, or a double deduction of tax or an inequitable avoidance of tax." S.Rep. No. 1567, 75th Cong., 3d Sess., 49–50 (1938).

17. See Knickerbocker, Mysteries of Mitigation: The Opening of Barred Years in Income Tax Cases, 30 Fordham L. Rev. 225, 241 (1961) where the author states that such an interpretation "is not only reasonable but correct."

case described in subparagraph (B) is inconsistent with the erroneous * * * omission."

There is no doubt that plaintiff in the District Court suit maintained an inconsistent position.[18] The problem here is whether the court in making its determination *adopted* plaintiff's inconsistent position.[19]

Plaintiff argues in effect that the statute requires that the court making the determination not only reach the same *result* as that urged by plaintiff, but that in so doing, it must adopt plaintiff's *theory* as a basis for the result urged. Plaintiff then contends that the District Court in partially granting the result which he urged did not adopt plaintiff's theory since it continued to use the Parker formula in allocating separate and community income.

At the outset, it should be pointed out that the requirement of section 1311(b) (1) is that the determination adopt a position inconsistent with the *error* [20] and that this position must have been actively maintained by the party seeking to interpose the bar of the statute of limitations.[21] See Dobson v. United States, Ct.Cl. No. 401–62, decided April 17, 1964, slip op., p. 6, 330 F.2d 646, 650 (concurring opinion by Laramore, J.). It also appears that the requirement of the statute is not satisfied if the court making the determination merely reaches the same result which

had been urged by the party who now seeks to interpose the bar of the statute of limitations. We believe that the statutory word "position" is not synonymous with result. The drafters by using the word "position" seem to have required that the court making the determination not only grant the result urged but also adopt the party's general theory as a basis for reaching this result. See Estate of A. W. SoRelle, 31 T.C. 272, 275 (1958).

With this in mind, we shall examine what transpired in the District Court proceedings. It is clear that the determination by the District Court partially granted the result urged by plaintiff, i. e., that for the year 1944 he had overstated his income since he had included amounts of income which should have been included in his wife's return. Plaintiff's theory for reaching the result urged was that a greater portion of the family income was primarily due to the extraordinary nature of his personal services performed in the production of that income, and as such should be community income rather than return of his separate invested capital reportable solely by him as separate income. The District Court partially sustained his theory that a portion of the family income which had been previously reported as separate income was not a return of his separate invested capital but was rather community income primarily due to his personal services. In the District Court

---

18. The position maintained by plaintiff in the District Court proceedings was that he had included certain community income in his return (which he had erroneously categorized as his separate income) which should not have been included in his return but should have been included in his wife's return. This was inconsistent with the erroneous omission of that very community income from the wife's return.

19. Section 1311(b) (3) requires the existence of the relationship of related taxpayer, here husband and wife, at the time the plaintiff first maintains the inconsistent position in a claim for refund. The claim for refund referred to is that filed by plaintiff on March 25, 1952, or

five years before plaintiff and cross-defendant ceased to be husband and wife.

20. See Knickerbocker, supra, note 17 at 239.

21. The essential function of the statute of limitations, i. e., the prevention of the litigation of stale claims was preserved when Congress enacted the mitigation sections since the bar of the statute is removed only when "the party or parties in whose favor it applies shall have justified such modification by active inconsistency." S.Rep. No. 1567, 75th Cong. 3d Sess., 49 (1938). See Note, Sections 1311–15 of the Internal Revenue Code: Some Problems in Administration, 72 Harv.L.Rev. 1536, 1538 (1959).

proceedings both parties agreed that a determination of what constitutes community income or separate income is essentially a question of fact. However, the District Court found that not all the family income which plaintiff urged to be due to his personal services was community income. The court found that part was due to the return of his separate invested capital and the excess was in large part attributable to intangibles constituting both separate and community income. The court then allocated this excess by the use of the Parker formula.

■ We agree with plaintiff that section 1311(b) (1) requires not only that the court making the determination reach the same result but also that it adopt plaintiff's general theory as a basis for reaching the result urged. However, plaintiff in his argument misconceives what was the result which he urged and what was his theory supporting that result. Here the result urged was that plaintiff overstated his income for the year 1944, since he included in his gross income amounts which should have been included in his wife's return. The theory which plaintiff urged in support of that result was that a larger amount of the family income should have been determined to be community income since such income was due to his personal services. The District Court partially agreed with him that a larger amount should be community income. Thus it can be said that the District Court not only partially reached the result urged by taxpayer but also adopted his theory as a basis for that result.

The fact that the District Court continued to use the Parker formula in order to allocate separate and community income should not be determinative. The Parker formula is not a legal theory but a device used for the allocation of income. Theoretically once the return on separate invested capital and a reasonable compensation for personal services have been determined and taken out of

the family income, there should be nothing left. However, such a precise valuation is often impossible.[22] Thus, in those circumstances where there is an excess of family income, the Parker formula comes into play. This formula recognizes the fact that this excess is often the result of unrecorded intangibles and intrinsic circumstances. Accordingly, it distributes such excess prorata between separate and community income. Had the District Court completely applied plaintiff's theory to all amounts of family income, resort to the Parker formula would have been unnecessary, since plaintiff urged that once a reasonable return for separate invested capital was determined, the excess of the family income was solely due to his personal services. However, the District Court only partially agreed with him with the result that there was an excess of family income and the Parker formula was used to allocate the excess. Consequently, we must hold that plaintiff's position was adopted by the District Court in its determination and that this position was inconsistent with erroneous omission from cross-defendant's gross income. Accordingly, the mitigation provisions of the Internal Revenue Code were properly invoked and cross-defendant's deficiency was legally assessed.

## III

Having determined that cross-defendant's deficiency for the year 1944 was properly assessed under the mitigations sections, we turn to the issue whether the government could properly credit plaintiff's overassessment with cross-defendant's deficiency.

As stated earlier, while plaintiff's District Court action was still pending, he entered into a property settlement agreement with his wife, preparatory to their subsequent divorce, in which it was provided, among other things, that plaintiff would pay any tax deficiencies assessed against either of them for the years of their marriage.

22. See G.C.M. 1030 VI–1 Cum.Bull. 26 (1927); G.C.M. 9825 X–2 Cum.Bull. 146 (1931).

The government argues that under the property settlement agreement it was a third party beneficiary and as such, it could collect cross-defendant's taxes from plaintiff. The government's right as third party beneficiary to collect another's taxes from an individual promising to pay them has been recognized in a number of occasions. E. g., United States v. Phoenix Indemnity Co., 231 F. 2d 573 (4th Cir. 1956); United States v. Scott, 167 F.2d 301 (8th Cir. 1948); American Equitable Assurance Co. v. Helvering, 68 F.2d 46 (2d Cir. 1933). It is equally true that under California law, the third party beneficiaries can enforce contracts made for their benefit. Cal. Civil Code, section 1559. Moreover, the contract creating the rights accruing to the third party beneficiary need not do so in express language. Corbin on Contracts, section 776 (pp. 23–24).

Under the parties' settlement agreement, plaintiff contracted with cross-defendant for consideration to pay any tax deficiency assessed against her for the years of their marriage. This agreement was entered into while the District Court suit was still pending. We believe that this clause in the settlement agreement was inserted by the parties to take care of the exact situation which confronts us. It is clear that under the agreement, the United States became a third party beneficiary. As stated earlier, the rights of third party beneficiary are enforceable under California law. It follows that the government, as a third party beneficiary with enforceable rights against plaintiff, could apply moneys due plaintiff and held by it in satisfaction of cross-defendant's debt to it.

Plaintiff argues that the case of Philadelphia Rapid Transit Co. v. United States, 10 F.Supp. 591, 81 Ct.Cl. 289 (1935), cert. denied 300 U.S. 664, 57 S.Ct. 507, 81 L.Ed. 872 (1936), requires a contrary result. In that case we were concerned with a completely different issue. Plaintiff here is not liable because he is the taxpayer, but because he contracted to pay cross-defendant's debt. In Philadelphia Rapid Transit, the rights of the government as a third party beneficiary were assumed by both parties. In that case we held since plaintiff and its lessor were separate taxpayers, the application of plaintiff's overpayment to its lessor's deficiency should not be treated for interest purposes as a statutory credit (occurring where a taxpayer's overpayment is applied to his own deficiency) but should be treated as a refund of plaintiff's overpayment followed by a turning over of the same funds in payment of the taxes of another. In the instant case we are concerned with the threshold issue of whether the government had any enforceable rights as a third party beneficiary while in Philadelphia Rapid Transit the government's rights were assumed by both parties.

Since we have determined that the government became a third party beneficiary under the settlement agreement, we hold that it was appropriate for it to apply a portion of moneys due him to his former wife's deficiency.

IV

Finally, plaintiff asserts that he was relieved of any obligation under the property settlement agreement because of an alleged breach of contract by his former wife. Specifically, plaintiff contends that cross-defendant's failure to deliver promptly the documents dealing with the tax deficiency assessed against her relieve him of any obligation to pay her tax. It appears that the only detriment which plaintiff suffered was that he was unable to have cross-defendant's assessment judicially determined in the Tax Court. However, it is clear that plaintiff or his representatives were aware that additional taxes had been asserted against cross-defendant long before the period for petitioning the Tax Court had expired. If plaintiff was so interested in having the litigation judicially determined in the Tax Court, he could have taken protective measures to safeguard his rights in this respect.

Our Commissioner has found that even if the alleged breach occurred, it has oc-

casioned no loss of rights to plaintiff and no damage measurable in money.

Consequently, we must hold that cross-defendant's alleged breach of contract, if there was any, did not relieve plaintiff of the obligation to pay the additional taxes.

Since we have determined that the assessment made against cross-defendant was properly made pursuant to the provisions of section 1311 et seq. of the Internal Revenue Code of 1954 and that under the property settlement agreement, the United States government, a third party beneficiary with enforceable rights under such an agreement, properly credited plaintiff's overassessment with cross-defendant's deficiency, plaintiff's petition is dismissed.