## The TRANSPORT COMPANY OF TEXAS, Petitioner-Appellant,

v.

## COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 75-1506.

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1976.

O. Jan Tyler, Robert K. Sands, Dallas, Tex., for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Gilbert E. Andrews, Jr., Acting Chief, Appellate Section, Dept. of Justice, Meade Whitaker, Chief Counsel, I. R. S., Bennett N. Hollander, Louis A. Bradbury, Wynette J. Hewett, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before GEWIN, GODBOLD and SIMPSON, Circuit Judges.

PER CURIAM:

This is an appeal from a decision of the United States Tax Court finding a deficiency of $44,404.94 in the taxpayer's federal income tax for 1964. The Tax Court's findings of fact and the opinion of Judge Goffe were filed on July 31, 1974; they are attached as Appendix "A." We affirm on the basis of that opinion and add but a few brief comments.

The issue on this appeal is whether the Commissioner succeeded in the Tax Court in establishing that the mitigation provisions of 26 U.S.C. §§ 1311–15 apply to the facts of this case with the result that the deficiency notice was not barred by the statute of limitations. One of the prerequisites for application of the mitigation provisions is that the taxpayer receive a double deduction. The Tax Court's opinion contains the following phrase: "We do not propose to speculate why the conferee allowed the deduction in 1964." Seizing upon this language and taking it out of context,

the taxpayer argued that the Commissioner had failed to show that the taxpayer had received a double deduction for 1963 and 1964 because the Tax Court would not even speculate why the deduction was allowed in 1964. Consequently, the taxpayer contends, the Commissioner failed to prove that the mitigation provisions apply.

We believe the thrust of the Tax Court's statement is that it would not speculate why the deduction was allowed *in the year 1964*. The report of the district conferee quoted in the Tax Court's findings of fact clearly states *why* the 1964 deduction was allowed:

> To allow the corporate taxpayer a deduction under 165(a) for loss of goodwill due to the loss of one of the corporation's largest customers.

Moreover, in its findings of fact the Tax Court explicitly recognizes the fact that the district conferee allowed the taxpayers a deduction in 1964 for "a loss of goodwill arising from the termination of the Texaco business." Consequently, the taxpayer's contention that the Tax Court refused to find the reason for the allowance of the deduction is without merit.

Secondly, the taxpayer contends that in its suit for refund of taxes for 1963 the jury reduced its verdict by the amount of the deduction previously allowed. Hence, the argument goes, it would be unfair for the Commissioner to now disallow the earlier deduction. The record in the taxpayer's suit for refund in district court, however, indicates that the jury in that case was not informed of the previously allowed deduction. To the contrary, at the request of the government, the court declined to read to the jury the stipulation regarding this deduction.[1] Furthermore, there was no mention of the earlier deduction either in the court's instructions or in the special interrogatories submitted to the jury.

AFFIRMED.

## APPENDIX A
### FINDINGS OF FACT AND OPINION
62 T.C. No. 65
### UNITED STATES TAX COURT
THE TRANSPORT COMPANY OF TEXAS,
Petitioner,

vs.

COMMISSIONER OF INTERNAL REVENUE,
Respondent.

Docket No. 3691–71.                    Filed July 31, 1974.

GOFFE, Judge:

The Commissioner determined a deficiency in the petitoner's Federal income tax for the taxable year 1964 in the amount of $44,404.94.

Some of the issues have been settled.

The issue to be decided is whether the 3-year period of limitations on assessment is inapplicable by reason of the application of the mitigation provisions (specifically section 1314(b) of the Code [1]) and, if so, wheth-er petitioner has maintained a position in 1963 inconsistent with the allowance in 1964 resulting in a double deduction. If petitioner has, we must decide whether petitioner is collaterally estopped from claiming a loss of goodwill in 1964 by reason of a judgment of the U.S. District Court with respect to the taxable year 1963.

### FINDINGS OF FACT

Some of the issues have been stipulated. The stipulation of facts, supplemental stipu-

---

1. Stipulation Exhibit 10 in this proceeding is a transcript of the suit for refund in district court. *See* pp. 40–42 of that transcript.

1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

lation of facts and exhibits are incorporated by this reference.

Petitioner is a corporation which was organized under the laws of Texas on November 1, 1951, with its principal place of business in Corpus Christi, Texas. It is an intrastate common carrier which specializes in the transportation of bulk petroleum products. Petitioner filed a Federal income tax return for the taxable year 1964 with the district director of internal revenue at Austin, Texas on March 13, 1965.

Petitioner is successor to an individual proprietorship bearing the same name which began operations in 1941. The sole proprietorship was established by Edgar M. Linkenhoger and it was engaged in the transportation of petroleum products in Texas.

After Linkenhoger organized petitioner in 1951 it purchased the entire going concern of the proprietorship for $3,570,000.

The sale included all of the equipment used in hauling petroleum products and chemicals and all of the real estate, including the building in which the offices were located, and all of the other assets used by the proprietorship in conducting its business. Each of the assets was valued and allocated to the total purchase price after which there remained an unallocated balance of $406,756.81 which was allocated to an asset account entitled "permits and goodwill." Of the total amount in the account, $31,756.81 was allocable to permits[2] and $375,000 was allocable to goodwill.

A major source of revenue of the proprietorship and its successor, petitioner, was the transportation of petroleum products for Texaco, Inc. In its first full year of operation after incorporation, 47 percent of petitioner's nongovernment business was at-tributable to the Texaco operations. The remainder of the nongovernment hauling was performed for other shippers, including several major oil companies.

In August of 1963, two officials of Texaco contacted petitioner's president, Edgar Linkenhoger, and advised him that Texaco planned to discontinue using petitioner as Texaco's primary carrier effective December 31, 1963, and Texaco planned, instead, to transport its own products. Petitioner and Texaco entered into contracts dated October 24, 1963, whereby petitioner sold 50 trucks and trailers out of its total fleet of 75 trucks and trailers to Texaco for delivery on January 2, 1964. Petitioner also agreed to sell its El Paso terminal facility to Texaco. The total sales price was $725,000 for the trucks, trailers and terminal. During 1964 petitioner purchased additional trucks and trailers. Petitioner lost no prime carrier relationships or hauling arrangements during 1964.

On its income tax return for 1964 petitioner reported a net taxable gain on its sale to Texaco in the amount of $274,354.28. One of the offsets to the gain claimed by petitioner was $245,030.30 for goodwill. The internal revenue agent who examined petitioner's return for the taxable year 1964 disallowed the $245,030.30 basis in goodwill with the following explanation:

> The increase in the gain from the sale of assets to Texaco is due to the disallowance of an addition to basis of assets sold for the cost of good will which the taxpayer claims that it sold along with other assets.

Petitioner filed a protest and the district conferee allowed petitioner $95,811.57 out of the $245,030.30 as a loss of goodwill arising from the termination of the Texaco business with the following explanation:

---

**2.** The permits consist of special motor carrier permits issued by the Railroad Commission of Texas, authorizing petitioner to haul petroleum products statewide. The Transportation Divi- sion of the Railroad Commission licenses and regulates transporters of petroleum products within the State of Texas.

| | |
|---|---|
| Total amount—Goodwill & Permits | $406,756.81 |
| To Permits | 203,378.40 |
| To Goodwill | $203,378.41 |
| Percent Goodwill applicable to Texaco business | 47.11% |
| Goodwill applicable to Texaco | $ 95,811.57 |

To allow the corporate taxpayer a deduction under 165(a) for loss of goodwill due to the loss of one of the corporation's largest customers.

Petitioner paid the deficiency of $40,540.73 for 1964 as modified by the district conferee.

On March 11, 1968, petitioner filed a claim for refund of income tax for the taxable year 1964, contending, among other things, the following:

As of January 1, 1964, taxpayer sold substantially all of its trucks and trailers used in the transportation business to Texaco, Inc. for the total price of $621,-502.30. Taxpayer's adjusted cost basis in the equipment sold was $181,408.22. Taxpayer had recorded on its books and records good will in the amount of $406,-756.81 which was purchased in 1952 when the transportation business was acquired by taxpayer. The actual sales price of $621,502.30 was substantially in excess of the actual aggregate per unit value of the trailers and trucks sold. Taxpayer thus sold all of its good will with the sale of its truck and trailer fleet to Texaco, Inc. and is entitled to include as its basis in determining the amount of gain realized on the sale the entire amount of the good will of $406,756.81 under Section 1001 of the Internal Revenue Code of 1954. The Commissioner erred in not allowing as part of the cost basis of the sale the entire amount of good will purchased by taxpayer in 1952.

The cover letter transmitting the 1964 claim for refund to the district director contained the following language:

This claim for refund is being filed for protective purposes only and the taxpayer requests that no action be taken by your office at the present time on the matter. This claim should be held in abeyance until such time that the taxpayer requests that it be given consideration. Consequently, it will not be necessary

that you assign this claim to any agent for examination. It is further requested that no disallowance of the claim be issued.

On November 1, 1968 petitioner's claim for refund for 1964 was disallowed by the district director. On October 19, 1970, pursuant to section 6532(a)(2), petitioner and respondent entered into an agreement on Form 907 to extend to October 31, 1971, the period of limitations for filing a suit for refund of tax for the taxable year 1964.

In filing its income tax return for the taxable year 1963, petitioner did not claim any deduction for loss of goodwill. On June 27, 1968 petitioner filed a claim for refund of income tax for the taxable year 1963 containing the following statement:

During the taxable year, taxpayer sold substantially all of its trucks and trailers used in the transportation business to Texaco, Inc. for the total price of $621,-502.30. Taxpayer's adjusted cost basis in the equipment sold was $181,408.22. Taxpayer had recorded on its books and records good will in the amount of $406,-756.81, which was purchased in 1952 when the transportation business was acquired by taxpayer.

Taxpayer is entitled to a deduction for the loss of all of its purchased good will since the purchased good will was lost as a result of the sale of the equipment to Texaco, Inc. The sale of the equipment to Texaco, Inc. was a closed and completed transaction in 1963 and was fixed by an identifiable event establishing the loss of the purchased good will.

The loss of the purchased good will in the amount of $406,756.81 is a loss sustained during the taxable year 1963 not compensated for by insurance or otherwise and is deductible under Section 165 of the Internal Revenue Code of 1954. The Commissioner erroneously refused to allow taxpayer a deduction in the amount of $406,-756.81 for loss of good will during the taxable year 1963.

Alternatively, the loss of the purchased good will is a loss incurred on the disposition of the property used in the taxpay-

er's trade or business and is deductible under Section 1231 of the Internal Revenue Code of 1954 for the taxable year of 1963. The Commissioner erred in refusing to allow taxpayer a deduction under Section 1231 of the Internal Revenue Code of 1954 in the amount of $406,756.81 for loss of good will during the taxable year 1963.

On November 1, 1968, the district director disallowed in full petitioner's claim for refund for the taxable year 1963.

On January 24, 1969 petitioner filed suit in the United States District Court for the Southern District of Texas seeking recovery of taxes and interest paid in respect of taxes for the taxable year 1963. The suit was styled *The Transport Co. of Texas v. United States,* Civil Action No. 69–C–4. On January 21, 1970 petitioner's refund suit was tried before the District Court sitting with a jury. Petitioner there contended that it sustained a deductible loss of purchased goodwill in 1963 in an amount of $375,000 when Texaco terminated its hauling arrangement. The United States contended that petitioner sustained no deductible loss of goodwill during 1963. The jury found that taxpayer suffered a deductible loss of goodwill in 1963 in the amount of $187,500 as a result of the termination of the prime carrier relationship by Texaco. The jury unanimously answered the four special interrogatories submitted to it as follows:

1. Do you find from a preponderance of the evidence that the hauling arrangement which had existed since 1952 with Texaco was terminated in 1963?

Answer: "yes."

2. Do you find from a preponderance of the evidence that plaintiff terminated, abandoned or disposed of an identifiable of [sic] distinct phase or line of business during the calendar year 1963?

Answer: "yes."

3. If you find that the hauling arrangement between plaintiff and Texaco was terminated, then do you find from a preponderance of the evidence that the plaintiff sustained a deductible loss of good will in 1963?

Answer: "yes."

4. What was the amount of the deductible loss of good will sustained by the plaintiff in calendar year 1963, if any?

Answer: "$187,500.00."

The Court entered judgment in accordance with the jury verdict on March 30, 1970. On June 8, 1970, the United States filed notice of appeal but the appeal was dismissed on August 26, 1970, and judgment for the taxable year 1963 thus became final on that date.

On March 10, 1971, the Commissioner of Internal Revenue issued a statutory notice of deficiency for the taxable year 1964 in which he disallowed petitioner's deduction for loss of goodwill in the amount of $95,-811.68 [3] with the following explanation:

It is determined that an amount equal to the deduction for a loss of goodwill in the amount of $95,811.68 previously claimed and allowed is restored to income in this year by reason of the fact that you adopted an inconsistent position, claiming said deduction with respect to both taxable years 1963 and 1964, and it has now been finally determined by the court of competent jurisdiction that said deduction is properly allowable in the year 1963. Accordingly, your taxable income is increased in the amount of $95,811.68 in order to prevent a double allowance for a single deduction. This inclusion is made pursuant to the provisions of sections 1311 to 1315, inclusive, of the Internal Revenue Code of 1954.

The statutory notice was issued more than three years after the filing of petitioner's return for the taxable year 1964.

## OPINION

Respondent bears the burden of proving that the period of limitations on assessment

---

**3.** The amount previously allowed was $95,811.57, not $95,811.68 as stated in the statutory notice of deficiency.

had not expired when he issued his statutory notice of deficiency based upon the mitigation provisions. *D. A. MacDonald,* 17 T.C. 934, 940 (1951).

The pertinent portions of the mitigation sections are as follows:

§ 1311. *Correction of error.*

(a) *General rule.*—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) *Conditions necessary for adjustment.*—

(1) *Maintenance of an inconsistent position.*—Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, or

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

\* \* \* \* \* \*

§ 1312. *Circumstances of adjustment.*

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \*

(2) *Double allowance of a deduction or credit.*—The determination allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer.

\* \* \* \* \* \*

§ 1313. *Definitions.*

(a) *Determination.*—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

\* \* \* \* \* \*

For the mitigation provisions to apply, all of the following conditions must be present:

(1) A "determination" as defined in section 1313(a);

(2) An error in a taxable year which cannot otherwise be corrected by operation of law;

(3) A "circumstance of adjustment" as defined in section 1312; and

(4) Maintaining a position in the prior determination by the party who prevailed which position was adopted there, but which is inconsistent with the erroneous allowance.

If respondent sustains the burden of proving that section 1311 applies, the error must be corrected in the manner prescribed by section 1314.

There is no dispute that conditions (1) and (2) are satisfied. The decision of the District Court is a determination as defined by section 1313(a). The decision of the District Court became final on August 26, 1970 at which time the statutory period for assessment of additional tax against petitioner for the taxable year 1964 had expired. Conditions (3) and (4) are disputed by the parties.

The respondent contends that the circumstance of adjustment as enumerated in condition (3) is the double allowance of a deduction described in section 1312(2), *supra.* In support of his position respondent points out that the District Court determination allowed petitioner a deduction for loss or abandonment of goodwill arising out of the termination of the Texaco relationship in 1963 and the district conferee, had previously allowed for the year 1964 "a deduction under 165(a) for loss of goodwill due to the loss of one of the corporation's largest customers," obviously Texaco.

Petitioner contends that there was no double allowance of a deduction because the District Court allowed a loss deduction in 1963 and petitioner claimed an offset to the selling price of the assets to Texaco in 1964 which, as petitioner points out, is not a deduction but an offset to the selling price in computing the gain.

Petitioner confuses what was *allowed* with what was *claimed.* The district conferee *allowed* a *deduction* in 1964 for the loss of goodwill under section 165(a) and the District Court *allowed* a *deduction* in 1963 for the loss of goodwill. Petitioner *claimed* an *offset* to the selling price of the assets in 1964 but an *offset* was not *allowed,* a *loss* was *allowed.* Section 1312(2) does not refer to what is *claimed* but, instead, to what is *allowed.*

Petitioner argues that the adjustment made by the district conferee in 1964 as to goodwill was allowed by reason of the sale of the assets and the deduction allowed by the District Court was allowed by reason of loss of the Texaco business. We disagree.

The language of the conferee's report indicates that the loss was allowed by reason of the loss of one of petitioner's largest customers. We do not conclude that allowing the deduction in 1964 indicates the loss resulted from sale of the assets. The sale of assets was obviously occasioned by the loss of Texaco's business. We do not propose to speculate why the conferee allowed the deduction in 1964; however, there is the language of his report reciting the loss to be due to the loss of the customer and there

is no evidence that he allowed it by reason of the sale of assets.

The remaining requirement for the application of the mitigation provisions is contained in section 1311 and it has two parts:

(1) The position maintained by the taxpayer in the District Court must have been adopted by the District Court; and

(2) The position adopted by the taxpayer before the District Court must be inconsistent with the allowance in the year of erroneous allowance.

Part (1) described is clearly satisfied. In his instructions to the jury in the 1963 refund suit, the District Judge made the following statement:

The law provides that in order for any loss to be deductible it must be sustained in the taxable year in which it is claimed. The law further provides that in order to fix the time when a deductible loss occurs, it is necessary to show completed and closed transactions evidenced by identifiable events.

Here the plaintiff claims that it sustained a deductible loss of good will in the year 1963. Therefore, you must look to see whether or not plaintiff's right to haul for Texaco on a first-refusal basis was terminated in the year 1963, as the plaintiff claims, or in the year 1964, as the government claims.

The jury answered the special interrogatories by finding that: (1) the hauling arrangement with Texaco terminated in 1963; (2) petitioner abandoned an identifiable portion of its business in 1963; (3) petitioner sustained a deductible loss of goodwill in 1963; and (4) the amount of the loss for 1963 was $187,500.

There can be little doubt that the District Court sitting with a jury adopted petitioner's position in its determination with the exception of allowing only $187,500 of the $375,000 deduction claimed by petitioner. The jury's findings indicate that they believed, as petitioner urged, that the identifiable event occasioning the loss of goodwill occurred in 1963 but, instead of attributing all of the purchased goodwill on the books

of Transport ($375,000) to the loss, only allowed an amount of goodwill equal to the percentage of the nongovernment business of Transport attributable to Texaco—approximately 50 percent by the jury's finding.

Part (2) described above is that the position maintained by the taxpayer in the prior determination must be inconsistent with the erroneous allowance. Petitioner contends that it did not take an inconsistent position with the one maintained by it in the District Court and instead, took the position in 1963 that it was entitled to a section 165(a) loss deduction arising out of an identifiable event in 1963 (the termination of the Texaco business) while taking the position in 1964 that it was entitled to include an amount attributable to goodwill in its adjusted basis as an offset to the sale price of the assets sold to Texaco. Petitioner argues that it makes no difference whether the district conferee supported the revenue agent's adjustment to petitioner's 1964 return which disallowed goodwill in petitioner's basis but, instead allowed petitioner a deduction of $95,811.57 for loss of goodwill under section 165(a) because petitioner has always maintained that it was entitled to an offset in 1964. Petitioner's 1964 claim contained alternative grounds for refund which urged the district director to increase the loss deduction from $95,-811.57 to $406,756.81. Even if no alternative grounds were presented, petitioner must fail because it has misunderstood the dictates of section 1311(b)(1).

The second requirement of section 1311(b)(1) requires that the position maintained by the taxpayer in the prior determination be inconsistent with the *erroneous allowance* (not necessarily the *position* of the taxpayer on his return or before the Commissioner in the various administrative proceedings). See, *Karpe v. United States,* 167 Ct.Cl. 280, 335 F.2d 454, 461 (1964); *Heineman v. United States,* 183 Ct.Cl. 17, 391 F.2d 648, 651 (1968). Petitioner has turned the requirement around to argue that its position in the erroneous allowance year is not inconsistent with its position in

the District Court. Petitioner's position in the erroneous allowance year (1964) is immaterial. Petitioner was allowed a deduction for loss of goodwill in 1964 and that is inconsistent with allowance of a deduction for loss of goodwill in 1963 by the District Court.

Having met all of the requirements of the mitigation provisions, respondent has sustained his burden of proving that the period of limitations had not expired when he mailed his statutory notice of deficiency.

Petitioner urges on the merits of the adjustment to 1964 that it is entitled to offset the selling price of the assets with goodwill lost by reason of contraction of its business. The offset to the sales proceeds is not the issue before us. The adjustment was the allowance of the deduction for loss of goodwill of $95,811.57. If petitioner desired to pursue the proposition of the offset which it claimed on its return and in its claim for refund for 1964, its remedy was to file suit on the disallowance of the claim for refund. Petitioner accepted the benefit of the deduction for loss of goodwill for 1964 which is the adjustment properly before us.

Respondent contends that petitioner is collaterally estopped to contest his disallowance of the deduction in 1964 because the District Court determined that issue in its case. Petitioner argues that the year of deduction was not specifically before the District Court. We disagree with petitioner. The quotation from the charge to the jury quoted above in referring to identifiable events and closed transactions makes it clear that the year of the loss was not only an issue in the case but was put squarely before the jury. Petitioner argued that all of the goodwill purchased should be allowed as a deduction. The jury allowed less than the full amount.

The facts upon which the District Court determination was made are the same facts which we would consider in deciding the issue on its merits. The facts have remained static, factually and legally, and such circumstances present a classic case for application of the doctrine of collateral estoppel. *Commissioner v. Sunnen,* 333 U.S.

591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Fairmont Aluminum Co.,* 22 T.C. 1377 (1954), affd. 222 F.2d 622 (C.A. 4, 1955), certiorari denied 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955). Respondent is, therefore, sustained in his disallowance of the deduction for loss of goodwill in 1964.

In order to reflect concessions of the parties,

*Decision will be entered under Rule 155.*