ESTATE of William J. KAPPEL (Deceased), (William D. Kappel and Sara Kappel Courtley, Co-Executors) and Sara Kappel Courtley, Surviving Wife, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 78–2148.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1979.

Decided Feb. 4, 1980.

Robert G. MacAlister, John A. Metz (argued), Pittsburgh, Pa., for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Gary R. Allen, Francis J. Gould (argued), Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellees.

Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and ZIEGLER, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This appeal by taxpayers from a decision of the Tax Court requires consideration of the interrelationship between the limitation on assessment and collection of tax in 26 U.S.C. § 6501 (1976) and the mitigation and adjustment provisions of the Internal Revenue Code, 26 U.S.C. §§ 1311–1314 (1976), dealing with maintenance of inconsistent positions. Specifically, we must determine whether, when a taxpayer makes an overpayment of taxes in one year the Commissioner can make an assessment of taxes for a year which was already time-barred at the time the overpayment was made. The Tax Court held that such an assessment was proper.[1] We conclude that the Tax Court misconstrued sections 1311 and 1312 of the Code, and we reverse.

I.  Facts and Proceedings in the
Tax Court

William J. and Sara M. Kappel filed joint federal income tax returns for the years 1954 and 1955. At issue in this appeal is

---

* Donald E. Ziegler, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The opinion of the Tax Court is reported at 70 T.C. 415 (1978).

their liability for additional income tax for 1954. Prior to that year William J. Kappel was an officer, director, and employee of four corporations, each of which maintained a separate employees' pension plan. Each pension plan had a separate trust, and each was funded by the corporation. The trustee contracted for separate annuity contracts on each participating employee through different life insurance companies. Besides being a participating employee, Kappel was one of several trustees in each plan. Beginning in 1954, and continuing in 1955, Kappel, as trustee, caused the annuity policies held in trust for his benefit to be surrendered to the issuing insurance company in exchange for their cash surrender value. Kappel then caused the cash surrender proceeds to be reinvested in deferred annuities of which members of his family were named as beneficiaries.[2] The Kappels did not report receipt of the cash surrender value of the policies on their federal income tax returns for either year. Those returns were audited some time thereafter. The revenue agent who conducted the audit proposed an adjustment increasing the Kappels' 1955 income by $276,039.40, representing the cash surrender value of annuity policies surrendered both in 1954 and in 1955. It was the revenue agent's theory that all the proceeds had been distributed, or made available, to Kappel in 1955, not in 1954. The Kappels protested the 1955 adjustment and requested reconsideration by the Appellate Division of the Internal Revenue Service, contending that $65,459.06 of the $276,039.40 had been distributed, or made available, in 1954, rather than 1955. The Appellate Division agreed that $50,100 had been made available in 1954, and therefore limited the increase in their 1955 income tax to $225,939.40. When the Kappels

did not agree to the proposed adjustment, insisting on a further reduction of $15,365.06, the Commissioner, on December 31, 1962, issued a statutory notice of deficiency for the year 1955 for tax on additional income in the amount of $225,939.40. On that date the statute of limitations in section 6501 was still open for 1955, but barred assessment or collection for 1954. The Kappels paid the deficiency and filed a refund claim for 1955, claiming that the disputed $15,365.06 in income was not distributed, or made available, to Kappel in that year. When no refund was forthcoming within six months, they filed suit in the United States District Court for the Western District of Pennsylvania for the disputed amount. The government filed an answer, but no counterclaim. After a trial the district court held that the $15,365.06 was not taxable in 1955 because it had been received in 1954.[3] The district court judgment became final on November 4, 1974.[4]

On November 3, 1975, one day short of a year after the judgment in the refund suit became final, over twelve years after the payment of the 1955 deficiency was made, and over seventeen years after the section 6501 limitation period had run on the return for 1954, the Commissioner issued a statutory notice of deficiency for that year for tax on additional income of $15,365.06. This time, instead of paying and suing for a refund, Mrs. Kappel Courtley and William J. Kappel's estate resorted to the Tax Court. They contended that the statutory notice of deficiency was time-barred, and that, in any event, the final judgment in their suit for refund barred what they considered to be a compulsory counterclaim. The Tax Court rejected both contentions.

2. Details of the transaction are set forth in *Kappel v. United States*, 437 F.2d 1222 (3d Cir. 1971), affirming 281 F.Supp. 426 (W.D.Pa. 1968). When the Internal Revenue Service contended the transfers from the pension funds were taxable the taxpayer restored the funds. In the cited case, dealing with the bulk of the transfers, their claim for relief under 26 U.S.C. § 1341 (1976) (computation of tax where taxpayer restores substantial amounts held under a claim of right) was rejected.

3. *Kappel v. United States*, 369 F.Supp. 267 (W.D.Pa.1974).

4. After the refund suit was filed, but before its termination, William J. Kappel died and his wife remarried. Sara Kappel Courtley and William D. Kappel are co-executors of his estate.

## II. Effect of the Mitigation Provisions

Section 1311 of the Internal Revenue Code provides for the correction of the effect of certain errors in the treatment of income or deductions under circumstances specified in section 1312 when because of the operation of a law, such as the statute of limitations in section 6501, such a correction would not otherwise be permitted. In most cases falling within these mitigation provisions correction of the effect of the error on a closed year can be made only if either the Commissioner, or the taxpayer, has taken a position in another taxable year which is inconsistent with the erroneous treatment of the item in the closed year. Section 1311 permits correction of the effects of an error only if: 1) there has been a "determination", as defined in section 1313, excluding the item of income, or allowing the deduction, in one year; 2) there has occurred a circumstance of adjustment described in section 1312; and 3) one of the conditions necessary for adjustment listed in section 1311(b) has been met. If all three statutory requirements are satisfied the Commissioner may issue a statutory notice of deficiency for the closed year within one year of the determination. 26 U.S.C. § 1314(b) (1976).

The Commissioner contends that there was a determination as defined in section 1313(a)(1) when the judgment in the suit for refund of the overpayment of 1955 taxes became final. That section defines "determination" to include:

(1) [A] . . . judgment . . . by any court of competent jurisdiction, which has become final.

Since the judgment in the Kappel refund suit for the overpayment of 1955 taxes became final three hundred sixty-four days before the statutory notice for 1954, section 1313(a)(1) and section 1314(b) appear to be satisfied. But as we noted above, the requirements of sections 1311, 1312, and 1313 are conjunctive. The taxpayers contend that the conjunctive requirements have not been met. They urge that the applicable circumstance of adjustment is that found in section 1312(3)(B):

The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year . . . .

Depending upon the time frame one chooses for looking at past events, that subsection describes the taxpayer's situation rather precisely. The determination in the refund suit required the exclusion from gross income for the taxpayers' 1955 tax year of a $15,365.06 income item. This item, moreover, was not included in the taxpayers' 1955 tax return, on the ground that it was properly includable in their 1954 tax return. However, the tax on that income item was not paid in 1954. Relying on that close fit, the taxpayers point to the conditions necessary for adjustment in section 1311(b), and in particular to section 1311(b)(2)(A):

In the case of a determination described in section 1312(3)(B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includable . . . was not barred, by any law or rule of law [including section 6501] at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312(3)(B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

The taxpayers read this section to mean that adjustment for 1954 is available only if, at the time the Secretary sent a statutory notice of deficiency as to 1955, to which the determination in the refund suit relates, tax year 1954 remained open. As noted above, it did not.

The Commissioner concedes that if section 1312(3)(B) applies, then section 1311(b)(2)(A) applies, and adjustment is unavailable as to years which were closed when the Commissioner's initial deficiency determination was made. Thus, had the

Kappels, following the 1962 notice of deficiency, petitioned to the Tax Court for redetermination of their 1955 tax liability, section 1312(3)(B) and section 1311(b)(2)(A), would, in combination, have precluded adjustment. The Commissioner contends, however, that despite their apparent applicability those sections are inapplicable. The controlling circumstance of adjustment, the Commissioner contends, is not that found in section 1312(3)(B), but that found in section 1312(3)(A):

> The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer *or with respect to which tax was paid* and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year. (emphasis added).

As to this circumstance of adjustment the condition necessary for adjustment in section 1311(b)(2)(A) does not apply. Instead, that specified by section 1311(b)(1)(B) applies. Section 1311(b)(1)(B) provides, in short, that a 1311(a) adjustment shall be made where "there is adopted in the determination a position maintained by the taxpayer  .  .  .  and the position maintained  .  .  .  by the taxpayer  .  .  . is inconsistent with the erroneous  .  .  . exclusion." The Commissioner, relying on

the italicized language in section 1312(3)(A), the determination in the refund suit as a determination under section 1313(a), and the inconsistency in the taxpayers' exclusion of the $15,365.06 from 1954 income and their position in the district court refund suit, urges that the taxpayers, by resorting to the option of paying the deficiency noticed in 1962, and suing for a refund, produced a circumstance of adjustment which permitted a reopening of tax year 1954 which would not otherwise have been possible. The applicability of the mitigation of limitations provision in section 1311 depends, in other words, not on anything the taxpayer does prior to receipt of the statutory notice of deficiency, but on which route he chooses to follow in contesting it.

▮ At first glance the Commissioner's position seems somewhat arbitrary. Yet there is authority supporting it. For almost forty years the Treasury Regulations have drawn the distinction, which the Commissioner urges, between taxpayers who never having reported an item in either tax year, contest a deficiency in the Tax Court, and those similarly situated who choose to pay the deficiency and sue for a refund.[5] This interpretation, moreover, has been accepted by the Court of Claims in a divided decision in *Birchenough v. United States*, 410 F.2d 1247, 187 Ct.Cl. 702 (1969). Yet, neither in

---

5. *See* section 1.1312–3 of the Treasury Regulations, Treas.Reg. § 1.1312–3 (1960), 26 C.F.R. § 1.1312–3 (1979), which paraphrases section 1312(3)(A) and is followed by an example:

> Example (1). (i) A taxpayer received payments in 1951 under a contract for the performance of services and included the payments in his return for that year. After the expiration of the period of limitations for the assessment of a deficiency for 1950, the Commissioner issued a notice of deficiency to the taxpayer for the year 1951 based upon adjustments to other items, and the taxpayer filed a petition with the Tax Court of the United States and maintained in the proceeding before the Tax Court that he kept his books on the accrual basis and that the payments received in 1951 were on income that had accrued and was properly taxable in 1950. A final decision of the Tax Court was rendered in 1955 excluding the payments from 1951 income. An adjustment in favor of the Commissioner is authorized with respect to the year 1950, whether or not a tax

had been paid on the income reported in the 1951 return.

> (ii) Assume the same facts as in (i), except that the taxpayer had not included the payments in any return and had not paid a tax thereon. No adjustment would be authorized under section 1312(3)(A) with respect to the year 1950. If the taxpayer, however, had paid a deficiency asserted for 1951 based upon the inclusion of the payments in 1951 income and thereafter successfully sued for refund thereof, an adjustment would be authorized with respect to the year 1950. (See paragraph (b) of this section for circumstances under which correction is authorized with respect to items not included in income and on which a tax was not paid.)

The example is carried forward from similar examples in earlier Treasury Regulations. *See* Treas.Regs. 118, § 39.3801(b)–3 (1953); Treas. Regs. 111, § 29.3801(b)–3 (1949), 26 C.F.R. § 29.3801(b)–3 (1949); and Treas.Regs. 103, § 19.3801(b) (1940), 26 C.F.R. § 19.3801(b)–3 (Supp.1940).

the Treasury Regulations, nor in the *Birchenough* majority opinion, nor for that matter in the government's brief, are we given any persuasive policy reasons for selecting that circumstance of adjustment in section 1312, among two, both of which literally apply, that results in a taxpayer, who is foolish enough to litigate in the district court or the Court of Claims, losing the protection of the statutory bar, while the taxpayer savvy enough to litigate in the Tax Court, is allowed to retain its protection. The basic purpose of the mitigation provisions is the prevention of manipulation by either taxpayers, or the Commissioner, with respect to the treatment of items of income, or deduction, by taking inconsistent positions. *See infra* at 97–98. The Commissioner has not pointed to any manner in which the government has been disadvantaged by the payment and suit for a refund that would not be equally true in a Tax Court petition. Yet the line drawn with respect to the availability of a section 1311 adjustment in the latter case is clear. Where, as here, the taxpayer, prior to the notice of deficiency, has included the income or paid the tax in neither year, adjustment of a closed year is possible only when the notice of deficiency is given while the correct tax year remains open. 26 U.S.C. § 1311(b)(2)(A) (1976). Operation of the policy against manipulation in that situation is plain. Prior to the Commissioner's action the taxpayer has taken a consistent position. If, when the Commissioner gives a statutory notice, the earlier year is still open, but the taxpayer refrains from acting until the statute of limitations has run, and then asserts that liability belongs in the closed year, the government has been prejudiced by the taxpayer's delay in asserting that position. But where, as here, the earlier year is time-barred at the time the notice of deficiency is sent, the government can in no way be prejudiced with respect to the collection of taxes for the only year still open. That lack of prejudice is no less apparent when the later determination is made in the Tax Court, than when it is made in a suit for a refund.

But, says the government, while the taxpayer's argument may have the virtue of logic and consistency, we are dealing with the technical Internal Revenue Code, and specifically with the language "or with respect to which tax was paid" in section 1312(3)(A). If that language were not included the government could offer no escape from the condition in section 1311(b)(2)(A), since the taxpayer never included the disputed item in a return. Still, the quoted disjunctive "or with respect to which tax was paid" must be given independent significance.

We agree that the quoted disjunctive can, and should, have independent significance, but not the arbitrary significance attached to it in the example set forth following Treas.Reg. § 1.1312–3. The taxpayer can mislead the government by filing a return, while both years are open, attributing an item of income to a later year, and sitting back until the proper year is closed before changing his position. In that case the government, relying on the initial treatment of the item by the taxpayer, can be prejudiced by the subsequent running of the statute of limitations on the closed year. The taxpayer can similarly mislead the government, when he has not included the item on any return, by making a payment while both years are open. If, for example, he makes a payment for a later year in response to a thirty day letter, or a statutory notice of deficiency, at a time when the earlier year is still open, the government may rely on the payment as taxpayer acquiescence in its treatment of the item, and would be prejudiced if after the earlier year is closed the taxpayer applies for a refund. In that instance the language in section 1312(3)(A) "or with respect to which tax was paid" protects the government from prejudice. Section 1312(3)(A) provides a circumstance of adjustment whenever a taxpayer either includes an item in a return, or makes a payment for one year at a time when both years are open. But when the taxpayer does neither while both years are open there is no possibility that action by the taxpayer can result in prejudicial inaction by the government. The prejudice

with respect to the closed year has already occurred as a result of the consistent, rather than the inconsistent, treatment of the item by the taxpayer. In such a case the circumstance of adjustment is that described in section 1312(3)(B) and the condition on adjustment in section 1311(b)(2)(A) that the correct tax year be open at the time the Commissioner gives a statutory notice of deficiency governs. Reading the several interrelated provisions in the manner we have outlined gives to each an independent significance which is entirely consistent with the policies of mitigation provisions.

Our interpretation of the mitigation provisions is entirely consistent with their legislative history. Those provisions were first enacted in 1938 to replace a somewhat untidy body of law by which the courts had attempted to deal, through the doctrine of estoppel, with the application of the Internal Revenue Code's statute of limitations in disputes over items of income or deduction arguably attributable to more than one tax year.[6] Describing the purpose and scope of what became section 820 of the Revenue Act of 1938, Ch. 289, § 820, 52 Stat. 581, the Senate Finance Committee said:

> In each case, under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute . . . is a plain misuse of its fundamental purpose. The purpose of the statute . . . to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken *prior to the running of the statute.* . . . Legislation has . . . been needed . . . to . . . [take] the profit out of inconsistency. (emphasis added).

Sen.Rep. No. 1567, 75th Cong., 3d Sess., *reprinted in* 2 Mertens, Law of Federal Income Taxation § 14.02, at 14–9 (Zimet & Stanley Rev.1974). Further emphasizing section 820's limited purpose the Committee observed:

> The legislation here proposed is based upon the following principles: (1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency.

In the case before us, prior to the running of the statute of limitations on tax year 1954, the taxpayers had done nothing inconsistent with the position they took after it ran, and before the Commissioner issued the statutory notice of deficiency for 1955. Nothing the taxpayer did fits within the Senate Finance Committee's description of exploitation of inconsistent positions.

When the mitigation provisions were enacted in 1938 they were greeted with considerable hostility by some segments of the practicing tax law bar. In response to that reaction an article was written which both sides in this controversy refer to as the definitive treatment of the intended purpose and operation of section 820. Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 509, 719 (1939). In that article the authors observe at 755:

> The tax may have been paid in only two ways—the item was included by the taxpayer in a return or he paid a deficiency which was asserted because of his failure to include the item. Consequently, where the item was not included in the return and the deficiency asserted because of such omission has not been paid but contested as a deficiency throughout, this subsection will not be applicable.

The reference is to the condition now found in section 1311(b)(2)(A). But the authors also noted that prejudice to the government

---

6. *See, e. g., Stearns Co. v. United States,* 291 U.S. 54, 61, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934); Maguire and Zimet, Hobson's Choice and Similar Practices in Federal Taxation, 48 Harv.L.Rev. 1281 (1935).

could arise, so long as the statute of limitations was open for both years, from the payment of an asserted deficiency as much as from the making of a return. This possibility of prejudice justified the special treatment in section 820(b)(3) of payments made by the taxpayer. The present equivalent of section 820(b)(3) is section 1312(3)(A). But elsewhere in the article the authors make it clear that the circumstance of adjustment in section 820(b)(3), payment, was only intended to apply to payments made at a time when the period of limitations on the disputed year had not expired. No other payment could have the effect of misleading the Commissioner.[7]

7. At 755–57 the authors explain:
While the taxpayer who thus wishes to avoid an adjustment under Section 820 is required to contest the matter in the Board and may not proceed by way of refund suit in the District Courts or the Court of Claims, a sound reason exists for such rigid dichotomy. Suppose the following case: a taxpayer received payments in 1937 under a contract for the performance of services and included the payments in his return for that year. After the expiration of the period of limitations on assessments for 1936, the taxpayer filed a claim for refund for the year 1937, asserting that he kept his books on the accrual basis and that, as the payments had accrued in 1936, they were properly taxable in that year. Although the taxpayer may have honestly thought he was acting properly when he included the payments in his return for 1937, such inclusion may well have lulled the Commissioner into not taking action with respect to 1936 while such action would have still been timely. The omission for 1936 and the inclusion for 1937 are objective indications that the taxpayer intended to pay some tax on the payments: he first thought 1937 was the proper year, and then realized that he could take advantage of the running of the statute of limitations to avoid tax entirely. Consequently, the shift of position properly gives rise to an adjustment. But suppose the taxpayer either thought he did not owe a tax at all with respect to the payments and consequently omitted them from his returns for 1936 and 1937, or negligently failed to include them for 1936, the proper year. In either case, after the period of limitation has expired, the policy underlying the statute of limitations would give repose to such a situation. The taxpayer here has not taken an inconsistent position—he has simply failed to pay a tax. But if subsection (b)(3) were extended to the case where a determination required the exclusion of an item from gross

Except for the nonunanimous decision of the Court of Claims in *Birchenough v. United States*, 410 F.2d 1247, 187 Ct.Cl. 702, none of the cases relied upon by the Commissioner expressly deals with the issue whether a deficiency payment, made after the statute had run on the correct tax year, is a payment within the meaning of section 1312(3)(A).[8] In *Birchenough*, moreover, the majority makes no serious analysis of the interaction of the various subsections dealing with mitigation in light of the policy behind that group of Code provisions. Instead, the Court of Claims majority relies almost entirely on the example set forth in Treasury Regulation § 1.1312–3(a)(2) quot-

income which had previously been erroneously excluded or omitted, so that an adjustment would be authorized without regard to the payment of tax with respect to the item, the statute of limitations would be swept aside. In the second situation presented above, if the Commissioner discovered the omission after the period of limitations had expired on assessments for 1936, he could simply assert a deficiency for 1940, or 1941, and so on, although knowing full well that such deficiency could not be upheld, thereby forcing the taxpayer to contend that the item belonged in 1936, and thus to take a position inconsistent with its omission in that year. After the Board had ruled against the deficiency, the Commissioner could then claim an adjustment for 1936. Section 820 would thus have offered an easy method to open the statute of limitations on assessments for failure to include items in gross income. In restricting subsection (b)(3) to the case where the tax had been paid in the later year, Congress was simply acting to "preserve unimpaired the essential function of the statute of limitations," though this meant allowing some taxpayers—as the taxpayer who thought in 1936 that the payment belonged in 1937 but then changed his mind before filing his return for 1937—to avoid a tax.

8. *See Kent Homes, Inc. v. C. I. R.*, 455 F.2d 316, 318–19 (10th Cir. 1972); *Yagoda v. C. I. R.*, 331 F.2d 485, 490–91 (2d Cir.), *cert. denied*, 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed.2d 48 (1964); *G–B, Inc. v. United States*, 302 F.Supp. 851, 853–54 (D.Colo.1969), *aff'd*, 422 F.2d 1035 (10th Cir. 1970); *Karpe v. United States*, 335 F.2d 454, 458–60, 167 Ct.Cl. 280, *cert. denied*, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1964); *Chertkof v. C. I. R.*, 66 T.C. 496, 499 (1976); *Cory v. C. I. R.*, 29 T.C. 903, 907, *aff'd*, 261 F.2d 702 (2d Cir. 1958), *cert. denied*, 359 U.S. 966, 79 S.Ct. 877, 3 L.Ed.2d 834 (1959).

ed above as a longstanding Treasury Department statutory interpretation. While Treasury Department interpretations are entitled to great deference,[9] they do not excuse a reviewing court from making an independent examination of the statutory language and legislative history. We have done so, and we conclude that *Birchenough* misinterpreted the mitigation provisions when it failed to apply the condition on adjustment in section 1311(b)(2)(A) in favor of a taxpayer who made a payment in response to a notice of deficiency only after the earlier of two tax years was already closed.

### III. Conclusion

Since the statute of limitations had already run on the year 1954 when the Commissioner issued the statutory notice for that year, and the condition on adjustment in Section 1311(b)(2)(A) prevents adjustment of 1954 taxes based on the decision of the district court for 1955, the decision of the Tax Court will be reversed. Since the statute of limitations applies there is no need to consider the taxpayer's alternative theory that liability for taxes for 1954 was a compulsory counterclaim in the refund suit for a 1955 overpayment.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.

The issue raised by this appeal—whether the payment of tax in response to the issuance of an I.R.S. deficiency notice brings the instant situation within the coverage of § 1312(3)(A) of the I.R.C., 26 U.S.C. § 1312(3)(A), thereby allowing mitigation of the statute of limitations—is not entirely free from doubt. However, notwithstanding the majority's argument that a payment in response to a deficiency notice is not the type of payment comprehended by Section 1312(3)(A), I would affirm the judgment below and hold that such a payment is a circumstance of adjustment within the meaning of that section. I find four compelling reasons that require such a conclusion: a straightforward reading of the statutory language; the existence of a clear regulation that was virtually adopted contemporaneously with the statute and that has remained in force for nearly four decades; the previously uncontroverted case law precedent set by the Court of Claims over a decade ago; and the policy considerations advanced in that decision of the Court of Claims. For these reasons, I respectfully dissent.

The starting point must, of course, be the statute. Section 1312 of the Internal Revenue Code enumerates the circumstances of adjustment that bring into play the provisions of Sections 1311–1314, and thereby mitigate the effect of the normal statute of limitations. Section 1312(3) governing the double exclusion of an item of income contains two subsections—"A," which applies to "an item included in a return filed by the taxpayer *or* with respect to which tax was paid, and "B," which applies to "an item not included in a return filed by the taxpayer *and* with respect to which the tax was not paid." I.R.C. § 1312(3) (emphasis added). It is clear that if subsection 1312(3)(A) is the applicable provision then the assessment under consideration is valid and the decision of the Tax Court should be affirmed. However, if subsection 1312(3)(B) is applicable, the mitigation provisions would not apply, *see* Section 1311(b)(2)(A), and the assessment in question would be barred by the statute of limitations.

The appellants admit that they did indeed pay the tax on the item in question. However, they observe that they did not pay the tax with the appropriate return, but only in response to an I.R.S. notice of deficiency that they were in the process of contesting. Hence, they contend, and the court today agrees, that subsection 1312(3)(A) is inapplicable. The statute, though, draws no distinctions regarding the manner or time of the underlying payment of tax. In the clearest terms, subsection 1312(3)(A) applies whenever the item in question was one

---

9. *See C. I. R. v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).

"with respect to which tax was paid." And, in equally clear terms, subsection 1312(3)(B) only applies when the item was one "with respect to which the tax was not paid." To contravene such clear statutory language surely requires more than the policy considerations which the majority ultimately relies upon.

Furthermore, to interpret the statute in the manner advanced by the majority renders meaningless the second half of subsection 1312(3)(A), as well as the second half of subsection 1312(3)(B). By in effect reading into subsection 1312(3)(A) the requirement that a notice of deficiency be issued while the correct tax year remains open, the majority has effectively eliminated from the statute the language relating to payment of the tax on the item in question. Under the majority's interpretation there would be no possible situation in which the provisions of subsection 1312(3)(A) relating to an item "with respect to which tax was paid" would apply that would not also be encompassed within subsection 1312(3)(B) relating to an item "with respect to which the tax was not paid." Yet, if one fact is clear on the face of the statute, it is that these two sections are not synonymous, but rather are intended to deal with different situations. And it is equally clear that subsection 1312(3)(A), because it is not subject to the restrictions of subsection 1311(b)(2)(A), was intended to apply in situations foreclosed under subsection 1312(3)(B). The majority opinion, today, in effect reads the distinctions between these two sections out of the statute.

In addition to subverting the language of the statute, the majority opinion flatly contradicts a Treasury Regulation that was adopted virtually contemporaneously with the statute and has stood as unchallenged authority for 40 years. *See* Treas.Reg. § 1.1312–3, Example (1)(ii). It is clear that such regulations should be honored by this court unless they flout the will of Congress. *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978); *C.I.R. v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). This regulation not only does not flout the congressional intent, but rather serves to implement a straightforward reading of the statute, a reading that, unlike the one adopted by the majority, gives meaning to each provision of the statute. In such a situation, we should accord a great deal of deference to this established and authoritative interpretation of the statute.

Furthermore, the majority opinion is not only inconsistent with a plain reading of the statute and at odds with a long-established Treasury regulation, but also flies in the face of decisional precedent that has been accepted for over a decade. In *Birchenough v. United States*, 410 F.2d 1247, 187 Ct.Cl. 702 (1969), the Court of Claims dealt squarely with the issue before us today, and determined that the applicable circumstance of adjustment was that described in subsection 1312(3)(A), thus making the mitigation provisions applicable.

In my view the rationale adopted by the *Birchenough* court is equally valid today. After commenting that the regulation discussed above was consistent with the statutory language as well as congressional intent, the court noted:

> The only argument plaintiffs can make is that the regulation disfavors taxpayers who choose to pay the deficiency and "then litigate by refund suit, rather than" to defer payment and sue in the Tax Court; the former are subject to adjustment under Section 1312(3)(A) (because they have paid the tax) while the others are not. In an early and authoritative article, then Professors Maguire, Surrey and Traynor gave the "sound reason * * * for such rigid dichotomy" (Section 820 of the Revenue Act of 1938, 48 Yale L.J. 719, 755–57 (1939)). There is no way to distinguish, these commentators pointed out, between a taxpayer who "may have paid the deficiency because he thought it correct but later decided to change his position because of the favorable opportunity presented by the expiration of the period of limitations for the earlier year" and another taxpayer who pays the deficiency solely because he prefers to litigate by refund action rather than before the Tax Court. "As there is no feasible method of differentiating between the two cases, and as the taxpayer against whom the deficiency is asserted

can protect himself from an adjustment * * * simply by not paying the deficiency, no unjustifiable hardship is worked by the rule * * *." Certainly, this ground is adequate to support the contemporaneous regulation, which must be accepted unless we can say that it is unreasonable or flouts the Congressional will.

410 F.2d at 1252, 187 Ct.Cl. 702 (footnotes omitted).

There is an additional reason for following the Treasury regulation and the *Birchenough* decision and affirming the Tax Court. That reason is evident when one considers the underlying justification for both the statute of limitation and, more particularly, the mitigation provisions. Statutes of limitation serve the function of eliminating stale claims, but in certain situations the policies behind such statutes are not furthered by their application. The mitigation provisions were enacted to deal precisely with such a situation. *See* Maguire, Surrey and Traynor, *Section 820 of the Revenue Act of 1938*, 48 Yale L.J. 509, 517–20 (1939). There is simply no reason to allow the appellants to raise the claim, in the context of the ongoing litigation they initiated regarding their 1955 tax return, that the item in question was attributable to 1954, and then allow them to argue that the issue of their 1954 taxes is stale. "He who seeks repose should practice it by letting sleeping dogs lie." *Id.* at 518.

The mitigation provisions, thus, have the salutary effect of minimizing litigation when the issue is merely whether income is taxable in one year or another. They accomplish this by removing the weapon of the statute of limitation from the arsenal of the party initiating such litigation. Clearly, Congress did not intend the party resisting a stale demand to be deprived of the defense of the statute of limitations but only the party that takes the offensive. *Id.* The appellants, though, fall within the latter category. By voluntarily paying the deficiency asserted against them with regard to 1955, and then bringing suit in District Court, the appellants took the offensive in raising the claim that the item of income in question was attributable to 1954.

The mitigation provisions, then, prevent them from doing an "about face" and arguing that their income for 1954 is a stale issue.

Of course, had the appellants never paid the 1955 deficiency, but merely contested the deficiency from a defensive posture, the Commissioner could not now raise the issue of their 1954 liability. The majority objects to this distinction in treatment, based solely on the fact of payment, as being unjustified. There are, however, several reasons to accept this distinction. First, and most importantly, the distinction is found in the statute which, as noted above, expressly distinguishes between items "with respect to which tax was paid" and items "with respect to which the tax was not paid." I.R.C. § 1312(3). Second, as noted in *Birchenough*, as well as in the article by Messrs. Maguire, Surrey and Traynor, the distinction is necessary because "there is no feasible method of differentiating," 48 Yale L.J. at 757, between the taxpayer who paid the deficiency solely because he preferred to litigate in District Court and the taxpayer who paid the deficiency believing it to be correct, but who now seeks to take advantage of the "favorable opportunity presented by the expiration of the period of limitations for the earlier year." *Id. See* 410 F.2d at 1252, 187 Ct.Cl. 702. Finally, it is worth bearing in mind that the decision to make this payment rests solely with the taxpayer, who can "protect himself from an adjustment under Section 820 simply by not paying the deficiency." 48 Yale L.J. at 757.

Recognizing that the appellants could have easily avoided re-opening their 1954 tax year by not voluntarily paying the 1955 deficiency, the majority seems to view the appellants' decision to make that payment as a kind of unwitting tactical error for which the appellants should not be held responsible. However, in all likelihood, the appellants' decision to pay the 1955 deficiency was a calculated one, designed to enable them to litigate in District Court where they may have believed that a favorable outcome was more probable. There is simply no reason to excuse the appellants from the legal consequences of the decision they made.

Indeed, even if the appellants' decision to pay the 1955 deficiency was a mere slip-up, there is no reason to reverse the decision below. The majority appears to believe it inequitable that the appellants should be required to pay tax some 25 years after receiving an item of income. However, my sense of equity would not be seriously troubled if the appellants were now required to pay this tax, 25 years after it was due, most of which time appellants have spent contesting the issue of their liability for the tax and the question of which particular year they are liable for. After 40 years of regulatory history and 10 years of case law precedent, during which time Congress could easily have modified this statute, I believe it is inappropriate for us to tinker with the previously accepted meaning of the mitigation provisions. No injustice would be worked by accepting a straightforward interpretation of the statute and applying the mitigation provisions to this situation. I would affirm the decision below.